UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| In re:<br><br>OSAGE EXPLORATION AND DEVELOPMENT, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 16-10308-SAH |

**DECLARATION OF KIM BRADFORD, PRESIDENT OF
OSAGE EXPLORATION AND DEVELOPMENT, INC. IN SUPPORT OF
CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, Kim Bradford, hereby declare under penalty of perjury:

1. I am the President of Osage Exploration And Development, Inc., a corporation incorporated under the laws of the State of Delaware (the "Debtor"). In this capacity, I am familiar with the Debtor's day-to-day operations, businesses, financial affairs, and books and records.

2. On the date hereof (the "Petition Date"), Osage Exploration And Development, Inc. filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. I submit this declaration (this "First Day Declaration") to provide an overview of Debtor and this chapter 11 case and to support Debtor's chapter 11 petition and "first day" motions (each, a "First Day Motion," and collectively, the "First Day Motions"). Except as otherwise indicated herein, all facts set forth in this First Day Declaration are based upon my personal knowledge of Debtor's operations and finances, information learned from my review of relevant documents, information supplied to me by other members of Debtor's management and

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,
In Support of Chapter 11 Petitions and First Day Motions**
2923415.3

Debtor's advisors, or my opinion based on my experience, knowledge, and information concerning Debtor's operations and financial condition. I am authorized to submit this First Day Declaration on behalf of Debtor, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## PRELIMINARY STATEMENT

4.  Debtor's business heavily depends on liquidity and the availability of capital to acquire, develop and exploit oil and natural gas properties, including drilling, completing, and producing the company's "proved undeveloped reserves" of oil and gas assets. Debtor has been struggling due to the substantial drop in and sustained low crude oil and natural gas prices over the past months. Based on Debtor's current capital structure, liquidity constraints, and inability to raise new capital, it has become necessary for Debtor to seek chapter 11 protection in order to protect and preserve its going concern value and to facilitate a prompt sale of all of its assets for the benefit of all stakeholders. Debtor has determined that this is the best way to ensure that the maximum value of its assets will inure to the benefit of its stakeholders.

5.  As a condition to the proposed DIP Financing (discussed below), Debtor is required to timely file a motion to approve bidding procedures and sell substantially all of its assets to the highest bidder available. The Debtor has an agreement with U.S. Energy Development Corporation to act as a stalking horse to assist in ensuring that the highest and best price is obtained for the Debtor's assets. Given the lack of liquidity faced by Debtor and the inability to raise additional capital, Debtor believes that such auction and sale process is the in the best interests of its creditors and stakeholders.

6.  To familiarize the Court with Debtor and the relief it will seek on the first day of this chapter 11 case, this First Day Declaration is organized as follows: Part I describes Debtor's

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**
2
2923415.3

corporate history, business operations, and prepetition organizational and capital structure. Part II describes the events leading to the commencement of this chapter 11 case. Finally, part III sets forth the relevant facts in support of each First Day Motion.

### I. Debtor's Corporate History and Assets, Business Operations, and Organizational and Prepetition Capital Structure.

#### A. Corporate History and Assets

7. Debtor is an independent oil and gas exploration and production company that was founded in September 4, 2004 and publicly traded since April 24, 2006. Debtor has in history had development acreage in two oil resource plays in Logan County and Coal County, Oklahoma, targeting the Mississippian and Woodford formations, respectively.

8. Debtor has a working interest in 55 wells located in Logan County, Oklahoma, and a royalty interest in 21 additional Oklahoma wells. Further, Debtor has a small royalty interest in 1 additional well located in Coal County, Oklahoma.

9. Based on the low projected prices for natural gas and the cost to develop its remaining Oklahoma acreage being at higher than economically viable levels, Debtor suspended development of the all of its acreage. The last well was drilled, completed and brought on line in January 2015.

#### B. Debtor's Business Operations.

10. Debtor is an independent oil and natural gas company engaged in exploration, production, development, acquisition and exploitation of crude oil and natural gas properties. Debtor's principal executive offices are located in San Diego, California. Debtor has approximately 4 employees between its San Diego corporate office and its field office in Guthrie, Oklahoma.

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**

3

2923415.3

C. **Debtor's Prepetition Capital Structure.**

11. As of the Petition Date, Debtor had long-term debt of approximately $25 million (outstanding principal amount), plus accrued interest, fees and other amounts outstanding through the Petition Date or that may be triggered as a result of these filings.

12. On April 27, 2012, the Debtor issued the Apollo Notes, which are secured by first-priority liens on substantially all right, title and interest in or to substantially all of the assets and properties owned or acquired by the Debtor. There are no personal guarantees on the Apollo Notes.

13. There are approximately 69 M&M liens that have been filed and additional secured claims totaling approximately $10,000,000. Some of these liens may claim to have priority over the liens of Apollo due to partial releases and refiling of some of Apollo's liens. Based on the Debtor's diligence and analysis, the Debtor believe that only approximately $1,579,000 of these liens may have priority over Apollo's liens of which all but less than $100,000 relate to the Everest 1-9 well only. Finally, there is an additional approximately $7,500,000 in general unsecured debt bringing the total obligations as of the Petition Date to approximately $42,500,000.

1. **Interests in Debtor.**

14. The Debtor's common stock was publically-traded and was listed on the NASDAQ OTC Bulletin Board ("NASDAQ OTC") under the ticker symbol "OEDV." On October 23, 2015, the Debtor voluntarily delisted its common stock. With the Debtor filing for Chapter 11 protection and entering into an asset purchase agreement to sell substantially all of Debtor's assets, Debtor will not be seeking to relist its stock.

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**
4
2923415.3

15. As of February 1, 2016, Debtor had issued and outstanding 58,284,948 shares of our common stock. Debtor is authorized to issue 190,000,000 shares of common stock.

### 2. Prior Sale of Assets

16. In 2014, the Debtor sold several wellbore-only working interests to various parties for approximately $423,000 cash. We also sold approximately $875,000 worth of land to various parties who then participated as working interest owners in our operated wells.

17. In 2015, the Debtor sold all 2,700 acres of its leased undeveloped Oil and Gas land in Coal County, Oklahoma to third-parties for approximately $137,000 cash. The leases that were sold were to expire shortly and the Debtor did not have the resources to develop the leases, therefore, rather than let the leases expire and experience a complete loss of the value thereof, the decision was made to sell and convert the leases to some value.

18. All of the net proceeds from the sales described above were used by the Debtor as working capital for the continued operation of its business.

## II. Events Leading to this Chapter 11 Case.

19. Debtor does not have the capital to continue a drilling program to develop its proven undeveloped oil and gas reserves (the "PUDs") or the liquidity sufficient to pay its operational expenses and debt service obligations. The substantial majority of the oil and gas lease acreage is made up of PUDs. Recovery of PUDs through development by drilling and completing wells requires significant capital expenditures and a successful drilling plan. Debtor's drilling plan depends largely upon the ability to find, develop or acquire additional oil and natural gas reserves that are economically recoverable. Unless Debtor replaces the reserves it produces through successful development, exploration or acquisition activities, Debtor's proven

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**
5
2923415.3

reserves and production will decline over time. Additionally, Debtor needs significant capital to fund its debt-service obligations on its long-term indebtedness. .

20. The interest payments on the Apollo debt totals approximately $3,125,000 per year. On October 31, 2015, Debtor elected not to make an interest payment due on its debt to Apollo thereby triggering a number of defaults under the Apollo loan documents.

21. Prior to filing this case, the Debtor and Apollo discussed various options to resolve the almost $26,000,000 debt owed to Apollo. The Debtor negotiated with the majority of its creditors for several months in an attempt to reach a workout agreement. However, due to the sharp decline in crude oil prices, the Debtor simply does have the ability to pay Apollo and its other substantial debts under any conceivable terms, therefore, a restructuring or reorganization is not feasible. Consequently, the only option is some form of liquidation.

22. Non-bankruptcy options for liquidation were considered. Due to the 30 or so M&M liens and the disputed priority of the same, a judicial sale using a receivership ultimate presented to a high litigation risk that would likely delay the sale process to the point that the Debtor would run out of cash before the sale could be closed. As a result, some sort of Bankruptcy case was determined to be the only viable vehicle to accomplish the liquidation by means of a sale under 11 U.S.C. §363 using a stalking horse auction.

23. The use of a Chapter 7 was deemed unworkable because the Debtor need to continue its business to facilitate the continued daily operations of its producing oil and gas wells to maintain the highest value of its assets and the substantial issues associated with the utilization of the necessary post-petition loan in Chapter 7 cases. Therefore, a Chapter 11 case presented the only means of accomplishing the stalking horse auction that could be negotiated with the Debtor, Apollo and U.S. Energy.

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**
6
2923415.3

24. Therefore, Debtor filed this chapter 11 case to preserve its going concern value as it moves forward with the marketing, auction and sale process of substantially all of its assets. After good-faith, arm's-length negotiations, Debtor reached an agreement with Apollo to provide DIP Financing to fund the orderly sale of its assets, subject to a marketing and auction process, pursuant to Section 363 of the Bankruptcy Code.

25. Debtor and Apollo have agreed to the following milestones: (i) the Debtor shall or shall use commercially reasonable efforts to file the sale and bid procedures motions on or before February 12, 2016; (ii) the bid procedures proposed by the sale motion shall have been approved by the Court on or before February 26, 2016; (iii) qualified bids shall be submitted to the Debtor on or before March 18, 2016, (iv) the hearing on the Sale Motion shall be on or before March 18, 2016 and (iv) the transaction approved by the sale order shall have been consummated within 15 days of the entry of the sale order (the "Sale Milestones").

### III. Evidentiary Support for First Day Motions.

26. As discussed above, Debtor has entered into chapter 11 with the goal of implementing a section 363 sale process. To that end, concurrently with the filing of its chapter 11 petition, Debtor has filed a number of First Day Motions seeking relief that Debtor believes is necessary to enable it to operate with minimal disruption and loss of productivity and protect and preserve its going concern value. Debtor requests that the relief requested in each of the First Day Motions be granted as critical elements in ensuring a smooth transition into, and stabilizing and facilitating Debtor's operations during the pendency of this chapter 11 case. I have reviewed each of the First Day Motions discussed below and the facts set forth in each First Day Motion

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**
7
2923415.3

are true and correct to the best of my knowledge and belief with appropriate reliance on corporate officers and advisors.[1]

    **A.**     **Motion for Entry of An Order Granting Authority to Limit Notice and Establish the Master Service List Applicable to This Case (the "Notice and Service Motion")**

27.     A large number of creditors, shareholders and parties in interest totaling over 2,500 persons may be entitled to receive notice in this case. As such, service of all documents filed in this case to each creditor and party in interest would be extremely burdensome and costly to the estates. Debtor, therefore, requests authority to establish a Master Service List that would include: (a) the Office of the United States Trustee for the Western District of Oklahoma (b) all known or alleged secured creditors, (c) the 20 largest unsecured non-insider creditors of the Debtor, (d) all known shareholders holding over 5% of a class of equity interests of the Debtor, (e) all Debtor professionals, (f) all members of any official committee of unsecured creditors that may be appointed, (g) counsel for, and any professionals retained by, any official committee of unsecured creditors that may be appointed, (h) the United States Attorney's Office for the Western District of Oklahoma, (i) the Internal Revenue Service, (j) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, (k) the SEC, (l) counsel for Apollo and (m) any such other government agencies to the extent required by the Bankruptcy Rules and Local Rules.

28.     The proceedings with respect to which notice would be limited to the Master Service List would include all matters covered by Bankruptcy Rule 2002, with the express exception of the following: (a) notice of (i) the first meeting of creditors pursuant to § 341 of the Bankruptcy Code, (ii) the time fixed for filing proofs of claim pursuant to Bankruptcy Rule

---

[1]     All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the relevant First Day Motion.

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**

3003(c), (iii) the time fixed for filing objections to, and the hearings to consider, approval of a disclosure statement and confirmation of a plan of reorganization, (iv) the time fixed for filing objections to, and the hearings to consider any motion seeking approval of a sale of all or substantially all of the Debtor's assets pursuant to § 363 of the Bankruptcy Code or any bid procedures or related relief with respect to such a sale transaction; and (b) notice and transmittal of ballots for accepting or rejecting a plan of reorganization. Notice of the foregoing matters would be given to all parties in interest in accordance with Bankruptcy Rule 2002, unless the Court orders, or the Bankruptcy Code prescribes, otherwise.

29. For all other creditors and parties in interest that are not listed on the Master Service List, the Debtor proposes to provide notice of the filing of pleadings and other papers by serving the notice form attached Notice and Service Motion as Exhibit "1" to those creditors and parties in interest by first-class mail, postage prepaid within three (3) business days after an Order approving this Motion is entered. As indicated in the Exhibit "1", Debtor has established a hyperlink on its corporate website enabling all interested parties to access filings in this case free of charge. This process will allow abbreviated notice on paper to be mailed to the full matrix and therein provide a means for any party who so desires to obtain a full copy of the relevant pleading at no cost.

30. Accordingly, I believe that the relief requested in the Notice and Service Motion is in the best interests of Debtor's estate, its creditors, and all other parties in interest. Establishing a Master Service List and the procedures set forth in the Notice and Service Motion will promote efficiency in this case and help the estates avoid substantial administrative costs while still providing notice to a substantial number of creditors, shareholders and parties in

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**

9

2923415.3

interest, including all parties requesting such notice. Accordingly, on behalf of Debtor, I respectfully submit that the Notice and Service Motion should be approved.

### B. Emergency Motion for Interim and Final Orders Providing Adequate Assurance of Utility Payments (the "Utilities Motion").

31. Debtor requests the entry of interim and final orders: (a) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (b) approving Debtor's proposed offer of adequate assurance and procedures governing the Utility Providers' requests for additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing, or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of Debtor's proposed adequate assurance pending entry of the Final Order; (d) determining Debtor is not required to provide any additional adequate assurance beyond what is proposed by the Utilities Motion, pending entry of the Final Order; and (e) setting a final hearing on Debtor's proposed adequate assurance.

32. In the ordinary course of business, Debtor incurs expenses for gas, water, sewer, electric, telecommunications, internet access, and other similar utility services provided by approximately 4 utility providers. Uninterrupted utility services are essential to Debtor's ongoing operations and, therefore, to the success of its ability to operate during this sale process. Indeed, any interruption of utility services, even for a brief period of time, would negatively affect Debtor's operations, customer relationships, and revenues, seriously jeopardizing Debtor's marketing, auction and sales efforts and, ultimately, creditor recoveries. It is, therefore, critical that utility services continue uninterrupted during this chapter 11 case.

33. I believe and am advised that the proposed procedures are necessary in this chapter 11 case, because if such procedures were not approved, Debtor could be forced to

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**
10
2923415.3

address numerous requests by the Utility Providers in a disorganized manner during the critical first weeks of this chapter 11 case. Moreover, a Utility Provider could blindside Debtor by unilaterally deciding—on or after the 30th day following the Petition Date—that it is not adequately assured of future performance and discontinuing service or making an exorbitant demand for payment to continue service. Discontinuation of utility service could shut down operations, and any significant disruption of operations could jeopardize a successful reorganization in this chapter 11 case.

34. I believe that the relief requested in the Utilities Motion is in the best interests of Debtor's estates, its creditors, and all other parties in interest, and will enable Debtor to continue to operate its businesses in chapter 11 with the least amount of disruption possible. Accordingly, on behalf of Debtor, I respectfully submit that the Utilities Motion should be approved.

    **C.    Motion Under 11 U.S.C. §§ 105(A) And 331 To Establish Procedures For The Interim Compensation Of Professionals.**

35. Through this Motion, the Debtor seeks approval of a procedure providing for the interim compensation of court-approved professionals on a monthly basis post-petition on a calendar month basis. The proposed procedure will (i) enable all interested parties to monitor the costs of administration; (ii) allow professionals to receive interim compensation; and (iii) allow the Debtor to better manage its cash flow. The Debtor believes this motion should be granted in order to facilitate the Debtor's retention of the most qualified professionals to assist in the sale of the Debtor's assets and the administration of the Debtor's estates.

    **D.    Motion for Authority to pay in the Ordinary Course (i) Undisputed Interest Billings, and Other Obligations Owing Under Oil & Gas Leases; (ii) Undisputed Prepetition Claims Subject to Statutory Liens; (iii) Undisputed Obligations or Taxes Owed to Governmental Authorities; and (iv) Certain Critical Vendors Relating to Oil & Gas Operations (the "Obligations Motion").**

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**
11
2923415.3

36.     Debtor requests entry of an order authorizing Debtor to pay in the ordinary course (i) undisputed prepetition joint interest billings ("JIBs"), and other obligations owing under oil and gas leases; (ii) undisputed prepetition claims subject to statutory liens; and (iii) undisputed obligations or taxes owed to governmental authorities; all relating to oil and gas operations from post-petition income attributable to the JIBs. I have reviewed the Obligations Motion and I am familiar with description of Debtor's oil and gas operations and the consequences for failure to pay Obligations (as defined in the Obligations Motion) on account of such operations as set forth therein. Such descriptions are true and correct and I hereby adopt and incorporate such descriptions as if fully set forth herein.

37.     As an oil and gas exploration and production company, payments of JIBs, mechanics and materialmen and working interest holders on a timely basis is vital to the continued operation of Debtor's business. Failure to timely pay JIBs and other amounts due under oil and gas leases can lead to potential lease forfeiture or substantial penalties under such leases and contracts which would adversely affect Debtor's operations to the detriment of all parties in interest. Additionally, failure to timely pay such Obligations could be detrimental to the marketing, auction, and sales efforts of the Company's assets. Accordingly, payment of such Obligations is vital to the continued operation of Debtor's business in order to maintain value.

38.     Similarly, failure to pay certain materialmen and workmen who provide services for Debtor relating to Debtor's oil and gas operations could give rise to statutory liens under applicable non-bankruptcy law. Resolution of such potential lien claims would be time-consuming and could result in expensive litigation. Accordingly, Debtor requests authorities to pay undisputed amounts owed to such workers to avoid issues related to potential liens.

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**
12
2923415.3

39. I believe that the relief requested in the Obligations Motion is in the best interests of Debtor's estates, its creditors, and all other parties in interest, and will enable Debtor to continue to operate its businesses in chapter 11 with the least amount of disruption possible. Accordingly, on behalf of Debtor, I respectfully submit that the Obligations Motion should be approved.

    **E.    Motion for Entry of Interim and Final Orders Pursuant to Bankruptcy Code Sections 105, 107(b), 361, 362, 363, 363 and 507 (i) Approving Postpetition Financing, (ii) Authorizing Use of Cash Collateral, (iii) Granting Liens and Providing Superpriority Administrative Expense Status, (iv) Granting Adequate Protection, (v) Modifying Automatic Stay, and (vi) Scheduling Final Hearing (the "DIP Motion").**

40. Debtor requests authority to incur post-petition debtor-in-possession financing on the terms set forth in the DIP Motion (the "DIP Financing"). The DIP Financing is vital to Debtor's continued operations and the preservation of value for all creditors and parties in interest. The DIP Motion and the exhibits attached thereto contain a description of the DIP Financing and key terms contained therein. I hereby by adopt and incorporate the description from the DIP Motion as if fully set forth herein.

41. Specifically, Debtor requests entry of an interim order authorizing Debtor to borrow approximately $400,000 under the proposed DIP Financing to avoid immediate and irreparable harm. Debtor is running out of cash and will have negative cash flow no later than February 29, 2016. As such, $400,000 is needed immediately to make the upcoming payroll obligations and fund continued operations.

42. Debtor further seeks approval of an additional $1.0 million in financing on a final basis for a total of $1.4 million. As discussed above, Debtor has pursued several avenues for raising capital. After seeking alternative means for financing and reviewing all available options,

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**

13

2923415.3

the proposed DIP Financing is, in Debtor's opinion, the best option for financing available to Debtor.

43. The Debtor's stipulations, allegations and agreements set forth in the DIP Motion and in the Proposed Interim Order at are accurate and reflect my beliefs and the Debtor's agreements. The relief proposed to be granted in the Proposed Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's estate because, without the use of Cash Collateral and receipt of the DIP Facility, the Debtor will not have the funds necessary to maintain its assets, sell or otherwise liquidate its assets, provide financial information, and pay employee compensation, payroll taxes, overhead, and other expenses necessary to maximize the value of the Debtor's estate. The Debtor requires the use of Cash Collateral and receipt of the DIP Facility as provided in the Proposed Interim Order.

44. The DIP Facility is conditioned upon the Debtor conducting a comprehensive marketing and sale process of its assets and business in accordance with each of the Sale Milestones described above. The Sale Milestones are reasonable and appropriate under the circumstances. The Debtor has actively marketed its assets for several months prior to the Petition Date. The marketing of the Debtor's assets resulted in an agreement with U.S. Energy Development Corporation to act as a "stalking horse" initial bidder to facilitate an auction of all of the Debtor's assets. Because Debtor requires the DIP Facility and use of Cash Collateral to operate is business sale process, the Sale Milestones and sale process negotiated with U.S. Energy Development Corporation and Apollo constitute the most efficient and economical method of marketing the Debtor's assets as a going concern, thereby maximizing the potential sale price of such assets.

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**
14
2923415.3

45. The DIP Financing will be used to fund Debtor's ongoing operating expenses and the administrative expenses of the bankruptcy case as Debtor pursues the marketing and sale process. I believe that the relief requested in the DIP Motion is in the best interests of Debtor's estates, its creditors, and all other parties in interest, and will enable Debtor to continue to operate its businesses in chapter 11 with the least amount of disruption possible. Accordingly, on behalf of Debtor, I respectfully submit that the DIP Motion should be approved.

### F. Application for Entry of an Order Authorizing the Employment and Retention of Crowe & Dunlevy as Counsel to the Debtor (the "Crowe Dunlevy Retention Application").

46. Debtor requests entry of an order authorizing the retention of Crowe Dunlevy ("Crowe Dunlevy"). Crowe Dunlevy has been corporate counsel for Debtor in the past and is intimately familiar with all aspects of Debtor's operations and business. Additionally, Crowe Dunlevy has assisted Debtor in preparing for filing this case and is more than capable of representing Debtor as lead counsel.

47. I believe that the relief requested in the Crowe Dunlevy Retention Application is in the best interests of Debtor's estate, its creditors, and all other parties in interest, and will enable Debtor to continue to operate its businesses in chapter 11 with the least amount of disruption possible. Accordingly, on behalf of Debtor, I respectfully submit that the Crowe Dunlevy Retention Application should be approved.

**Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,**
**In Support of Chapter 11 Petitions and First Day Motions**

15

2923415.3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

San Diego, California

Dated: February 3, 2016

By: _____

Kim Bradford
President
Osage Exploration And Development, Inc.

Declaration of Kim Bradford, President of Osage Exploration And Development, Inc.,
In Support of Chapter 11 Petitions and First Day Motions

16

2923415.3