## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| ) | Chapter 11 |
| In re: ) |  |
| ) |  |
| OSAGE EXPLORATION AND ) | Case No. 16-10308 |
| DEVELOPMENT, INC., ) |  |
| ) |  |
| Debtor. ) |  |
| ) |  |
| ) |  |

### <u>Bidding Procedures</u>

By motion dated February 16, 2016, (the "<u>Motion</u>")[1], Osage Exploration and Development, Inc., debtor and debtor-in-possession in the above-captioned case (the "<u>Debtor</u>") sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for the sale (the "<u>Sale</u>") of substantially all of their assets outside the ordinary course of business and the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "<u>Purchased Assets</u>") as described in the Asset Purchase Agreement, dated as of February __, 2016, (the "<u>Stalking Horse APA</u>," a copy of which is attached to the Motion as Exhibit "A") to the Purchaser (the "<u>Stalking Horse Bidder</u>").

On March _____, 2016, the United States Bankruptcy Court for the Western District of Oklahoma (the "<u>Court</u>") entered an order (the "<u>Bidding Procedures Order</u>"), which, among other things, authorized the Debtor to determine the highest or otherwise best bid for the Purchased Assets through the process and procedures set forth below (the "<u>Bidding Procedures</u>").

The sale will be subject to competitive bidding as set forth herein and approval of the Court pursuant to sections 105, 363, and 365 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

### A.     Participation Requirements

Subject to the restrictions specified herein, entities qualifying as "<u>Qualified Bidders</u>," in the determination of the Debtor and its advisors, in consultation with Apollo Investment Corporation ("<u>Apollo</u>" or the "<u>Consultation Parties</u>"), will be permitted to submit competing offers or bids for the Purchased Assets as specified below. Any competing bid shall:

a.     be comprised of the purchase price in the initial minimum amount equal to no less than the sum of $5,000,000.00 in cash, which is

---

[1]     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stalking Horse APA or the Motion, as applicable.

US 4032717v.1

**EXHIBIT 1**

the Purchase Price set forth in the Stalking Horse APA, *plus* $225,000.00, in cash (the "Initial Competing Bid Amount") acceptable to the Debtor, in consultation with the Consultation Parties;

      b.      be net of any adjustments in the purchase price resulting from (i) any Title Defects, (ii) any costs arising in connection with or violations, or conditions or circumstances giving rise to liability, under any Environmental Laws, or (iii) for any other reason whatsoever, unless otherwise consented to by the Debtor, in consultation with the Consultation Parties; and

      c.      not be conditioned on obtaining financing or on the outcome of unperformed due diligence, including with respect to Title Defects or Environmental Laws, by the Potential Bidder with respect to the assets that the bidder is seeking to Purchase, or have other material conditions or contingencies to closing, unless otherwise consented to by the Debtor, in consultation with the Consultation Parties.

For purposes of considering competing offers or bids, the highest and best Qualified Bid (as defined below) shall be considered the opening bid at the Auction.

**B.**    **Bid Requirements**

The Debtor, in consultation with the Consultation Parties, shall determine whether a bid qualifies as a "Qualified Bid."

Any entity wishing to participate in the bidding process (each a "Potential Bidder") must submit a bid for the Purchased Assets. To be a Qualified Bid, (i) a bid for the Purchased Assets must, among other things, be for an amount equal to at least the Initial Competing Bid Amount.

A Potential Bidder that becomes a Qualified Bidder shall be permitted to participate in the Auction and to bid for the Purchased Assets upon substantially the same terms and conditions (other than the Purchase Price and as otherwise noted in these Bidding Procedures) as those set forth in the Stalking Horse APA. To participate in the process detailed by these Bidding Procedures and to otherwise be considered for any purpose hereunder, each Potential Bidder must on or before the Bid Deadline (defined below) submit to the Debtor a completed Bid Submission Form substantially in the form attached as Exhibit A and containing the following:

1.    An executed confidentiality agreement in form and substance acceptable to the Debtor.

2.    Full disclosure of the identity of each entity that will be bidding for the assets or otherwise participating in connection with such bid and the complete terms of any such participation.

3.    A bid in a single amount for all of the Purchased Assets.

4.      A bid solely in the form of cash denominated in United States Dollars (a "Cash Bid").

5.      An irrevocable offer in the form of an executed asset purchase agreement (the "Modified Agreement") (A) without financing, regulatory or due diligence contingencies, including with respect to Title Defects or Environmental Laws, or other material conditions or contingencies to closing, unless otherwise consented to by the Debtor in consultation with the Consultation Parties, and without board (or comparable) approval or other contingencies, (B) at a price payable in cash equal to or exceeding the Initial Competing Bid Amount and (C) on terms substantially similar to those terms contained in the Stalking Horse APA, and in no event on terms less favorable (as a whole) than those contained in the Stalking Horse APA. The Qualified Bidder shall also submit a marked Modified Agreement reflecting the variations the Qualified Bidder proposes to make from the Stalking Horse APA executed by the Stalking Horse Bidder.

6.      A good faith cash deposit in the form of a cashier's check or wire transfer into an  escrow account of the Debtor (the "Escrow Account") in an amount of One Hundred Thousand Dollars ($100,000) (the "Initial Deposit"), which deposit shall immediately become non-refundable and credited toward the purchase price if and when the Qualified Bidder making such deposit is declared to be the winning bidder (the "Winning Bid" and "Winning Bidder") at the Sale Hearing. In the event a Qualified Bidder is not the Winning Bidder such Qualified Bidder's deposit shall be refunded as set forth in paragraph I of these Bidding Procedures.

7.      A list of the Debtor's executory contracts and unexpired leases with respect to which the Potential Bidder seeks assignment from the Debtor. The Debtor's maximum liability for Cure Costs for all assumed executory contracts and unexpired leases shall be $75,000 and the Bidder shall be responsible for any Cure Costs in excess of that amount.

8.      Reasonably satisfactory written evidence, in the discretion of the Debtor and its advisors, in consultation with the Consultation Parties, of its financial ability to (a) fully and timely perform and close the Sale pursuant to the Modified Agreement if it is declared to be the Winning Bidder, and (b) provide adequate assurance of future performance of all executory contracts and unexpired leases to be assigned to it and payment of all Cure Costs in excess of $75,000.

9.      Disclosure of any connections or agreements with the Debtor, the Stalking Horse Bidder or any other known potential, prospective bidder or Qualified Bidder, and/or any officer, director or equity security holder of the Debtor or Apollo.

10.     Identification of the employees of the Debtor to whom it will offer

employment if it is the Winning Bidder.

11.  Confirmation in writing of its agreement to accept and abide by the terms, conditions and procedures set forth herein and provide evidence of authorization from the Potential Bidder's board of directors (or comparable governing body) to enter into the Sale pursuant to the Modified Agreement.  In the event that the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Bidder must furnish written evidence and other documents and assurances acceptable to the Debtor, in consultation with the Consultation Parties, of the approval of the contemplated transaction by the equity holder(s) or members of such Potential Bidder and the ability of the Potential Bidder to close the transaction.

12.  Not request or entitle the Potential Bidder to any break-up fee, expense reimbursement, termination fee or similar type of payment or bid protection.

A "Qualified Bid" is a bid submitted by a Potential Bidder that satisfies the requirements of a competing bid in Section A(1) above and the requirements of this Section B, as determined by the Debtor, in its business judgment and in consultation with Consultation Parties.  For the avoidance of doubt, no waiver of any Bid Requirements shall be permitted without the consent of the Consultation Parties.  The Debtor's determination of whether a bid is a Qualified Bid shall be final.

The Debtor shall provide counsel for Apollo a copy of all bids promptly upon receipt. The Debtor will promptly advise each Potential Bidder in writing whether or not the Potential Bidder is a Qualified Bidder.  If a bid submitted on or prior to the Bid Deadline fails to meet all the requirements of a Qualified Bid, the Debtor is entitled to work with the Potential Bidder in an effort to cure any defects in the bid and to cause such bid to become a Qualified Bid prior to the commencement of the Auction.  For purposes of these Bidding Procedures, the Stalking Horse Bidder is deemed to be a Qualified Bidder.

### C.    Bid Deadline

**The Bid Deadline for submitting bids on the Purchased Assets by a Potential Bidder shall be March 22, 2016 at 4:00 p.m. (Prevailing Central Time).**

A Potential Bidder that desires to make a bid must deliver written copies of its bid, by mail, facsimile, or email, so as to be received prior to the Bid Deadline to (i) counsel to the Debtor, Crowe & Dunlevy, 500 Kennedy Building, 321 South Boston Avenue, Tulsa, Oklahoma 74103, Attn: Mark A. Craige and Michael R. Pacewicz; (ii) counsel for Apollo, McAfee & Taft, 10th Floor, Two Leadership Sq., 211 N. Robinson, Oklahoma City, OK 73102, Attn: Steven W. Bugg; and (iii)  the United States Trustee, 215 Dean A. McGee Ave. 4th Fl., Oklahoma City, Oklahoma 73102, Attn: Charles Snyder.

After the Bid Deadline, but at least twenty-four hours prior to the Auction, the Debtor shall provide each Qualified Bidder that submits a Qualified Bid with a list of the names and

amounts of all Qualified Bidders and Bids, which list is subject to change based upon the final determination of whether a particular bid is a Qualified Bid.

**D.      Obtaining Due Diligence Access and Due Diligence Requests from Potential Bidders**

Upon execution of a confidentiality agreement in a form acceptable to the Debtor, any Potential Bidder that wishes to conduct due diligence on the Debtor or its assets may be granted access to all material information that has been or will be provided to the Stalking Horse Bidder and other bidders.  The due diligence period for Potential Bidders will end one business day prior to the Bid Deadline.

The Debtor shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtor or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale.  Failure by the Potential Bidder to comply with requests for additional information may be a basis for a determination that a bid made by the Potential Bidder is not a Qualified Bid.

**E.      "As Is, Where Is"**

The Sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or estate, except to the extent set forth in the purchase agreement between the Debtor and a Winning Bidder or the assignment and bill of sale delivered pursuant to the purchase agreement.  Except as otherwise provided in the Stalking Horse APA, all of the Debtor's rights, title and interest in and to the Purchased Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests"), such Interests to attach to the net proceeds (if any) of the Sale of the Purchased Assets, with the same validity and priority as existed immediately prior to such Sale.

Each bidder, other than the Stalking Horse Bidder (whose acknowledgements and representations are contained in the Stalking Horse APA), shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Purchased Assets prior to making its offer, that it has relied solely upon its independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the Stalking Horse APA.

**F.      The Auction**

If a Qualified Bid(s) (other than the Stalking Horse APA) by a Qualified Bidder is received by the Bid Deadline, an auction (the "Auction") with respect to the sale of the

Purchased Assets covered by such Qualified Bid(s) shall take place on **March 24, 2016 at 1:00 p.m. Prevailing Central Time** (the "Auction Date") at the offices of Crowe & Dunlevy, 324 North Robinson Avenue, Oklahoma City, OK 73102, or such other place and time as the Debtor shall notify all Qualified Bidders, Apollo, and other invitees.  If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held and the Debtor may proceed to sell the assets pursuant to the Stalking Horse APA.  The following rules shall apply at the Auction:

1. Only Qualified Bidders that have submitted Qualified Bids shall be entitled to make a bid at the Auction. The Stalking Horse Bidder is deemed to be a Qualified Bidder.  Apollo is deemed to be a Qualified Bidder as provided in the Reservation of Rights at paragraph L below;

2. Each Qualified Bidder shall appear in person or have an authorized representative appear on the Qualified Bidder's behalf;

3. Each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

4. The Debtor, in its business judgment and in consultation with the Consultation Parties, based in part, on the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction and such other information as may be relevant, will conduct the Auction in the manner that they determine will best promote the goals of the bidding process and will achieve the maximum value for its assets;

5. At the Auction, Qualified Bidders will be permitted to increase their Qualified Bids (such increased Qualified Bid, a "Qualified Overbid"), provided that such Qualified Overbid for the Purchased Assets shall exceed the next highest bid by at least $100,000.00 in cash.  The Stalking Horse Bidder may match any Qualified Overbid and thereby become the high bidder.

6. Qualifying Bidders may then submit successive bids in the same increments as described in section F(5) above in cash, than the preceding Qualified Bid or Qualified Overbid, *provided, however*, that the Debtor, after consultation with the Consultation Parties, shall retain the right to modify, in its business judgment, the bid increment requirements at the Auction.

7. At the conclusion of the Auction or, if no other Qualified Bids are received by the Bid Deadline, then as soon as practicable after the Bid Deadline, the Debtor, in consultation with the Consultation Parties, shall review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the bidding process, including those factors affecting the speed and certainty of consummating the Sale, and liabilities

6

being assumed, and identify the highest, best and/or otherwise financially superior offer for the Purchased Assets (the "<u>Winning Bid</u>" and the entity submitting such Winning Bid, the "<u>Winning Bidder</u>").  There may be only one Winning Bid.

8.      The Debtor, in consultation with the Consultation Parties, shall also name the entity presenting the next highest bid for the Purchased Assets (the "<u>Next Highest Bid</u>" and the entity presenting same (the "<u>Next Highest Bidder</u>"), which may be the Stalking Horse Bid.

9.      The Winning Bidder shall make an additional cash deposit in the form of a cashier's check or wire transfer into the Escrow Account in an amount to bring the Winning Bidder's total deposit to at least 10% of the Winning Bid (the "Additional Deposit").   The Additional Deposit shall be completed by the close of business of the next business day following completion of the Auction.

10.     At the Sale Hearing (as defined below), the Debtor shall present the Winning Bid and Next Highest Bid to the Court for approval. The Debtor's presentation of the announced Winning Bid to the Court for approval does not constitute the Debtor's acceptance of such Winning Bid. The Debtor shall have accepted a Winning Bid only when the Court has approved such bid.

11.     The Debtor, in consultation with the Consultation Parties, may continue the Auction from time to time, adjourn the Auction at any time and re-open the Auction at any time prior to the commencement of the Sale Hearing.

12.     The Debtor reserves all rights to terminate the bidding process at any time if the Debtor determines, in its business judgment, in consultation with the Consultation Parties, that the bidding process will not maximize the value of the Debtor's bankruptcy estates.   In addition, the Debtor reserves all rights, after consultation with the Consultation Parties, not to submit any bid that is not acceptable to the Debtor for approval to the Court. Without limiting the generality of the foregoing, the Debtor, in consultation with the Consultation Parties, may reject at any time before entry of a Sale Approval Order approving a Qualified Bid any bid that, in the Debtor's discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtor, their estates and creditors.

### G.     Other Terms

If a Qualified Bidder submits the high bid and the Stalking Horse Bidder is not the successful bidder for the Purchased Assets, the Debtor, on the fifth (5th) business day following the closing of the sale of the Purchased Assets to the prevailing Qualified Bidder , shall pay to

Stalking Horse Bidder a break-up fee in the amount of $150,000.00 (the "Fee Reimbursement"). The Stalking Horse Bidder shall also be entitled to seek reimbursement for all reasonable documented costs   (the "Expense Reimbursement") incurred by the Stalking Horse Bidder in connection with the negotiation and execution of the term sheet, the Stalking Horse APA and the transactions contemplated thereunder, not to exceed $75,000.00.   The Stalking Horse Bidder shall file with the Court an application seeking approval of the Expense Reimbursement pursuant to section 503(b)(1)(A) and the Debtor shall pay the Expense Reimbursement upon approval. The Fee and Expense Reimbursement shall be allocated pro rata among the Purchased Assets based upon the allocated purchase price assigned to the Assets.

At the conclusion of the Auction, the Winning Bid shall be the bid made pursuant to the Bidding Procedures Order that represents the highest or otherwise best offer as determined by the Debtor in consultation with the Consultation Parties.  If an Auction is held, the Debtor shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Winning Bid at the Auction, (ii) the Winning Bidder shall have paid the Additional Deposit; and (iii) definitive documentation has been executed in respect thereof.   The Winning Bidder shall make the Additional Deposit into the Escrow Account within one (1) business day after the conclusion of the Auction. Such acceptance by the Debtor of the Winning Bid is conditioned upon approval by the Court of the Winning Bid and the entry of an Order approving such Winning Bid.   In the event that the Debtor is unable to close the transaction with the Winning Bidder then, at the option of the Debtor in its business judgment in consultation with the Consultation Parties, the Debtor may elect to close the transaction with the Next Highest Bidder as contemplated by J.2 below in which case such Next Highest Bidder will be deemed the Winning Bidder for purposes of these Bidding Procedures.

The proceeds from the sale of the Purchased Assets shall be allocated among the various categories of assets in the percentages set forth on Schedule 3 to the Stalking Horse APA.  The allocation of the purchase price on Schedule 3 shall be binding on the Winning Bidder, the Debtor and all creditors.  All liens, claims or other Interests shall attach to the proceeds allocated to the assets upon which such lien, claim or other Interest existed with the same validity and priority as existed immediately prior to such Sale. For the avoidance of doubt, and notwithstanding anything herein that may arguably be construed to the contrary, any and all cash, cash equivalents, and other forms of consideration paid by the Winning Bidder to the Debtor upon the closing of the Sale must be used by the Debtor to (i) first repay the DIP Obligations in full; and (ii) second held by the Debtor to be distributed in accordance with the separate order(s) of the Court consistent with the provisions of the Bankruptcy Code.

H.    Sale Hearing

On **March 31, 2016 at 9:30 a.m. Prevailing Central Time**, the Court will hold a hearing (the "Sale Hearing") to consider approval of the Sale of the Purchased Assets to the Winning Bidder (or to approve the Stalking Horse APA if no Auction is held), including (a) the sale and transfer of substantially all of the Debtor's assets and (b) the assumption and assignment of certain executory contracts and unexpired leases.

### I.    Return of Deposit

Upon approval of the Sale by the Court, the Winning Bidder's deposit shall become non-refundable.  Within five (5) Business Days after the closing of the Sale to the Winning Bidder, the refundable deposits of all unsuccessful bidders shall be refunded.  In the event a dispute arises about whether a deposit is refundable or non-refundable, the deposit shall remain in the Escrow Account pending a determination of the dispute by the Court.

### J.    Failure to Close

The transaction evidenced by the Winning Bid shall close not later than fifteen (15) days after entry of the Sale Order (the "Closing Date") at which time the Winning Bidder shall pay the balance of the Winning Bid (the Winning Bid amount less the deposit) into the Escrow Account.

In the event a declared Winning Bidder fails to timely perform any of its obligations as set forth above or pursuant to the definitive agreements:

1.    The declared Winning Bidder shall forfeit all deposits made without regard to the Debtor's ultimate damages occasioned by such failure; such deposits shall be applied to the Debtor's damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtor and the bankruptcy estates shall retain all other rights, remedies, claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief.

2.    In the event there are two or more Qualified Bidders who submit bids, the Next Highest Bidder shall keep its final and highest bid open pending a closing of a transaction with the Winning Bidder.  In the event that a transaction represented by any higher or better bid is not consummated by the Closing Date (unless the Closing Date is extended as set forth herein), the Next Highest Bidder shall be deemed the Winning Bidder without further order of the Court, and such bidder shall be required to consummate the transaction contemplated in its bid within ten (10) days of being deemed the Winning Bidder.  Any deemed Winning Bidder who fails to timely perform shall forfeit all deposits made without regard to the Debtor's ultimate damages occasioned by such failure; such deposits shall be applied to the Debtor's damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtor and the bankruptcy estates shall retain all other rights, remedies, claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief.  The Stalking Horse Bidder shall keep its bid open pending the closing of a transaction(s) with a Winning Bidder that is not the Stalking Horse Bidder.

3.    The Debtor, in consultation with the Consultation Parties, may grant any declared Winning Bidder additional time to perform, and, to the extent necessary, extend the Closing Date.

### K.      Fees and Expenses

Any bidders presenting bids, except the Stalking Horse Bidder, shall bear their own fees and expenses in connection with the proposed sale, whether or not such sale is ultimately approved, in accordance with the terms of the purchase agreement.  Further, by submitting a bid, a Potential Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its bid or the Bidding Procedures.  Notwithstanding the foregoing, the Stalking Horse Bidder may recover fees and expenses in accordance with the provisions hereof and the Stalking Horse APA.

### L. **Reservations of Rights.**

The Bidding Procedures may be modified by the Debtor in its business judgment in consultation with the Consultation Parties at any time prior to or during the Auction if the Debtor determines, in consultation with the Consultation Parties, that such modifications will better promote the goals of the Auction process and the maximization of value to the bankruptcy estates.  Apollo fully reserves its rights to credit bid its claims arising under its prepetition loan documents for the Purchased Assets at any time prior to the consummation of a transaction in the event that any sale of the Purchased Assets will not result in net cash proceeds to the Debtor's estate of at least $5,000,000