## Attachment "B" – Modified Agreement

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is made and entered into the 24th day of March, 2016, by and between **RED BLUFF RESOURCES OPERATING, LLC**, with a mailing address at 3030 NW Expressway, Suite 650, Oklahoma City, Oklahoma 73112; hereinafter referred to as the "Purchaser," and **OSAGE EXPLORATION & DEVELOPMENT, INC.**, with a mailing address at 2445 Fifth Avenue, Suite 310, San Diego, California 92101; hereinafter referred to as the "Seller."

## WITNESSETH, THAT:

**WHEREAS**, the Seller is presently involved in the oil and gas business and owns oil and gas assets located in the State of Oklahoma;

WHEREAS, the Seller filed a voluntary petition for reorganization relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of Oklahoma (the "Bankruptcy Court"), Case No. 16-10308 (the "Bankruptcy Case"), and will be seeking the entry of an order by the Bankruptcy Court approving this Agreement and authorizing the Seller to consummate the transactions contemplated hereby and by the other transaction documents, subject to competing bids as hereinafter set forth; and

**WHEREAS**, the Seller desires to sell, transfer and assign to the Purchaser, and the Purchaser desires to acquire from the Seller, pursuant to Sections 363 and 365 of the Bankruptcy Code, the oil and gas business assets that are owned and/or being used by the Seller in the conduct of the Seller's oil and gas business (the "Business"), as more particularly described below;

**WHEREAS**, the parties have memorialized their agreement herein; provided that the schedules referenced in this Agreement shall be completed and provided at a later date.

**NOW, THEREFORE**, in consideration of the mutual covenants, representations and warranties herein contained, the parties agree as follows:

1.    **SALE OF BUSINESS ASSETS.**  Subject to the terms and conditions of this Agreement, at the Closing, as hereinafter defined, the Seller shall sell to the Purchaser and the Purchaser shall purchase from the Seller, free and clear of all liabilities, claims, liens, encumbrances, and interests, , all of the assets of the Seller used or held for use in the operation of the Business, excepting those items excluded by Section 2 hereof (collectively the "Purchased Assets"), including, but not limited to, all right, title, and interest of the Seller in, to, and under:

(a)    all oil and gas leases and other oil and gas interests, including all fee, working, royalty and overriding royalty interests, farmout interests, net profits interests, production payments, and other non-working interests, operating rights and other mineral rights of every nature and any rights that arise by operation of law or otherwise in such properties, and including all rights and interests in any unit or pooled area in which such properties are included, whether

**EXHIBIT 2**

arising under any unitization, pooling, operating, communitization or other declaration, order, or agreement of otherwise, (hereinafter the "Oil and Gas Properties" and the lands subject to any of the Oil and Gas Properties);

(b)     all oil and/or gas wells, including working, royalty and overriding royalty interests (hereinafter referred to as the "Wells") and all of the Seller's right, title and interest in all severed crude oil, natural gas, casinghead gas, drip gasoline, natural gasoline, petroleum, natural gas liquids, condensate, products, liquids and other hydrocarbons and other minerals or materials of every kind and description produced from or attributable to the Oil and Gas Properties and produced into the storage tanks or pipelines at or after the Closing.; Any oil in storage tanks and gas meters will be measured or read on the date of Closing and revenue proceeds for that production month will be split between the Purchaser and Seller based upon the relative barrels or MCF produced either before or after Closing.

(c)     all salt water disposal wells (hereinafter referred to as "SWDs");

(d)     any pipelines, gathering systems or related facilities (hereinafter referred to as the "Pipelines");

(e)     all surface leases, servitudes, privileges, rights of way, licenses and easements relating to and/or used in connection with the Oil and Gas Properties, the Wells, SWDs, and/or the Pipelines (hereinafter referred to as the "Rights of Way") and, to the extent transferable, all of the Seller's right, title and interest in all franchises, licenses, permits, approvals, consents, certificates and other authorizations and other rights granted by any governmental body and all certificates of convenience or necessity, immunities, privileges, grants and other rights, that relate to the Oil and Gas Properties or Wells or the ownership or operation of any thereof or which are otherwise used by Seller in connection with its business (hereinafter referred to as the "Permits");

(f)     all real property/real estate owned by the Seller and used in the Seller's Business (hereinafter referred to as the "Real Estate");

(g)     all physical facilities, above and below ground equipment, vehicles, rolling stock, inventory, supplies, tanks, buildings, flow lines, gathering lines, processing systems, plants, compressors, meters, machinery, wellhead and other equipment, tools, structures and fixtures of every type and description to the extent that the same are used or held for use in connection with the ownership or operation of the Purchased Assets (the "Equipment");

(h)     all files, records, logs, abstracts, title opinions, title reports, title policies, lease and land files, logs, geophysical, seismic (to the extent transferable by the Seller), geological, engineering, exploration, production and other technical data, evaluations, production histories, surveys, analyses, compilations, correspondence, filings with regulatory agencies, all other books, records, files and electronic storage media containing financial, title or other information that in any manner relates to the Purchased Assets, including, but not limited to, originals (if available) or copies of all leases, agreements, contracts, and similar documents necessary or convenient for the operation of, or related to, the Oil and Gas Properties, Wells, SWDs, and/or Pipelines, including all gas and/or oil sales and marketing agreements;

      **(i)**     all revenues attributable to production from the Wells subsequent to Closing and attributable to production from the Wells produced into storage tanks or pipelines at and after the Closing;

      **(j)**     for any Wells operated by the Seller, the Seller will resign as operator effective as of the Closing, or such other date mutually agreed upon by the Seller, and the Purchaser and the Seller will execute all documents necessary to permit the transfer of the status of operator to the Purchaser, including any documents required by the applicable state regulatory agency, provided the Seller does not warrant it has the ability to ensure transfer of the operator of the Wells;

      **(k)**     the executory contracts and unexpired leases identified on Schedule 1(k) hereto, which shall be assumed and assigned to the Purchaser pursuant to 11 U.S.C. § 365, provided that the cure costs for the assumption (the "Cure Costs") shall not exceed $75,000 in the aggregate[1]; and

      **(l)**     the Seller shall provide complete lists of the Purchased Assets to the Purchaser within 5 days of the execution of the Agreement.

      **2.**     **EXCLUDED ASSETS.**  Any and all assets of the Seller not included as part of the Purchased Assets under Section 1, including those assets listed below, shall be excluded from the purchase and sale contemplated by this Agreement (the "Excluded Assets"):

      **(a)**     all cash and cash equivalents;

      **(b)**     all accounts receivable, promissory notes, rights to payment, causes of action, choses in action or general intangibles;

      **(c)**     all revenues attributable to production occurring prior to Closing;

      **(d)**     security deposits and pre-paid expenses made or given by the Seller;

      **(e)**     offsets, defenses and counterclaims against any of the Seller's vendors, provided, however, offsets, defenses, and counterclaims shall be included within the Purchased Assets to the extent necessary or helpful in the Purchaser (i) defending title to the Purchased Assets, and (ii) defending against any claims against the Purchaser in any way related to its acquisition of the Purchased Assets;

      **(f)**     any tax refunds, credits and other tax attributes of the Seller;

---

[1]   Oil and gas leases are not executory contracts or unexpired leases under applicable law and are therefore not listed on Schedule 1(k). The Final Order will include a finding and conclusion that the Seller's oil and gas leases are not subject to assumption or rejection or the cure requirements under 11 U.S.C § 365, but may be assigned to the Purchaser. ~~Schedule 1(k) also contains a complete and accurate list of all preferential purchase rights applicable to the transactions contemplated by this Agreement.~~

(g)     any office space leases utilized by the Seller in the operation of the Business;

(h)     the Joint Operating Agreement on the Everest 1-9 well and any other joint operating agreement, executory contract or unexpired lease not listed on Schedule 1(k); all excluded executory contracts will be rejected by the Seller[2].

(i)     any tax returns, financial information and statements, minute books, stock ledgers, corporate seals, stock certificates and other similar records which, by law, the Seller is required to retain in its possession, it being understood that in any event the Seller shall be entitled to retain copies at its expense of any books, records or documents that are otherwise included in the Purchased Assets;

(j)     any and all rights, claims, duties, or powers of the Seller pursuant to the Bankruptcy Code or claims or causes of action arising prior to the Closing against third parties, and any proceeds thereof, except to the extent the rights or claims are with respect to a counter-party to an assumed executory contract or unexpired lease included within the Purchased Assets, in which case the rights and claims under the Bankruptcy Code against the counterparty shall be included within the Purchased Assets;

(k)     all shares of capital stock or other equity interests in any third-party (including any subsidiary of Seller) or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in any third-party;

(l)     insurance policies of Seller and rights under insurance policies;

(m)     any and all assets not related to the Business it being understood that all Real Estate, Oil and Gas Properties, Wells, SWD's, Equipment, Pipelines, Rights of Way, Permits and other assets specifically described in Section 1 above are Purchased Assets and not Excluded Assets;

(n)     all rights of the Seller under this Agreement; and

(o)     any and all documents which the Seller is required by applicable law to retain.

*Eight Million Four Hundred Thousand* ~~RB~~

**3.     PURCHASE PRICE.**  The purchase price for the Purchased Assets shall ~~be Five Million Two Hundred Twenty Five Thousand~~ and No/100ths Dollars ~~($5,225,000.00)~~[3] (the "Purchase Price"), subject to adjustment as provided herein.  The Purchase Price shall be allocated among the Purchased Assets in the percentages set forth in Schedule 3.  The allocation shall detail the percentage of the Purchase Price attributable to (i) separately to each of the Wells operated by the Seller, (ii) all of the non-operated well interests, and (iii) all personal property.  The Purchaser shall pay all applicable sales taxes

$8,400,000

---

[2]     Schedule 1(k) will be subject to amendment to add or delete executory contracts and unexpired leases at any time prior to entry of the Final Order.

[3]     ~~Price to be updated based on the Winning Bid amount, if Red Bluff is the Winning Bidder.~~

or other transfer taxes in addition to the Purchase Price; provided, however, the Purchaser and the Seller shall seek to include in the Final Order a provision that provides that the transfer of the Purchased Assets shall be free and clear of any sales, use, stamp, documentary stamp, filing, recording, transfer or similar fees or taxes or governmental charges (including any interest and penalty thereon) payable in connection with the transactions contemplated by this Agreement. The Purchaser shall not be responsible for or required to pay any Cure Costs. The Seller shall pay all Cure Costs, provided that Seller shall not be required to pay any Cure Costs in excess of $75,000 in the aggregate.

4. **PAYMENT OF PURCHASE PRICE.** The Purchase Price shall be paid as follows:

(a) The Purchaser has deposited the sum of One Hundred Thousand Dollars ($100,000.00) (the "Initial Deposit") with the Seller's attorney, to be held in trust and disbursed only in accordance with this Agreement. The Seller shall have no interest in the Initial Deposit or the Additional Deposit (defined in the bidding procedures approved by order of the Bankruptcy Court) unless and until Closing occurs, provided that should Closing not occur as a result of action by the Purchaser constituting a breach of this Agreement, the Initial Deposit and the Additional Deposit (together, the "Deposit") shall be dealt with as provided in the last paragraph of this section. In the event that the Closing shall occur, the Deposit shall be paid to the Seller at the Closing and applied to the Purchase Price.

(b) At the Closing, the balance of the Purchase Price shall be paid by the Purchaser to the Seller in the form of immediately available funds. Such funds shall be paid by wire transfer as directed by the Bankruptcy Court.

In the event that this Agreement is terminated in accordance with its terms for any reason, provided that the termination does not result from a delay in Closing that is solely attributable to a breach of this Agreement the Purchaser, the Deposit shall be returned to the Purchaser within five (5) business days of termination. If the Closing does not occur solely due to a breach of this Agreement by the Purchaser, then the Deposit shall be paid to the Seller as liquidated damages and in full satisfaction of any claims which the Seller may have hereunder.

5. **CONTINGENCY.** The closing of the transaction contemplated by this Agreement is contingent (the "Closing Contingencies") upon the execution of this Agreement by all parties, and receipt by the Seller of an order from the Bankruptcy Court, after appropriate notice, authorizing and approving the sale, transfer, assumption, assignment and conveyance of the Purchased Assets to the Purchaser pursuant to Sections 363 and 365 of the Bankruptcy Code, free and clear of any and all liabilities, claims, liens, encumbrances, and interests of all kinds (the "Final Order"). The Final Order shall be in form and substance reasonably acceptable to the Purchaser and shall include the findings necessary to provide the Purchaser with the protection of Bankruptcy Code § 363(m) and establish that the sale is not subject to avoidance under Bankruptcy Code § 363(n). The Final Order shall also include findings and conclusions by the Bankruptcy Court on due notice that the Seller's rights, title, and interests in, to, and under each of the Purchased Assets are not subject to cancellation or termination, and have not been adversely affected, as a result of any pre-Closing non-payment of royalties, working interest owners, taxes, or any other amounts. Further, unless waived by the Purchaser, the Final Order must no

longer be subject to appeal as of the Closing or the Final Order shall provide pursuant to Bankruptcy Rule 6004(h) that such order is not stayed. The Seller shall diligently pursue obtaining the Initial Order and the Final Order following the execution of this Agreement by all parties. The Purchaser shall cooperate in the Seller's efforts to obtain the Initial Order and the Final Order.

## 6.    PRORATIONS AND ADJUSTMENTS.

**(a)**    All pre-petition and post-petition royalties, of any kind, attributable to production from the Wells prior to Closing shall be paid by, or caused to be paid by, the Seller, and the Seller shall provide proof to the Purchaser of the payment of such royalties no later than Closing. In no event shall the Purchaser or its properties be liable for pre-petition royalties or pre-Closing royalties. All royalties attributable to production from the Wells sold subsequent to the Closing shall be paid by, or caused to be paid by, the Purchaser on Wells operated by the Purchaser.

**(b)**    Suspended Revenue: Seller shall cause to be paid all pre-petition and post-petition royalties, of any kind, attributable to production from the Wells prior to Closing. Pursuant to Section 6(b), liability for all other payments required pursuant to oil and gas leases or otherwise required on property included within the Oil and Gas Properties, Wells, Pipelines, SWDs and Real Estate, all taxes payable with respect to the Oil and Gas Properties, Wells, Pipelines, SWDs, and Real Estate, and all payments required pursuant to the agreements referenced in Section 1(k) shall be prorated and adjusted as of the Closing. As to suspended revenue and other third party funds held by the Seller, the parties intend to implement these provisions by delivery by the Seller to the Purchaser of the suspended revenue and other third party funds held by the Seller as of the Closing (the "Suspended Revenue"). Purchaser agrees to accept the Suspended Revenue and to pay those funds to the owners thereof in the ordinary course of business as title to those funds becomes marketable or payment otherwise becomes due. Purchaser's liability shall be limited to the Suspended Revenue actually received from Seller and Purchaser shall have no liability whatsoever to anyone for unpaid royalties, proceeds of production, taxes or any other amounts not received by Seller as part of the Suspended Revenue.

**(c)**    Liability for all other payments required pursuant to oil and gas leases or otherwise required on property included within the Oil and Gas Properties, the Wells, Pipelines, SWDs and Real Estate, all taxes payable with respect to the Oil and Gas Properties, Wells, Pipelines, SWDs, and Real Estate, and all payments required pursuant to the agreements referenced in Section 1(j) shall be prorated and adjusted as of the Closing. The Seller's obligation to pay such amounts allocated to it shall be governed by the Bankruptcy Code.

## 7.    DUE DILIGENCE.

Prior to the execution of this Agreement, the Seller has had access to the data room containing its records and information related to the Purchased Assets and states that it has completed its due diligence to a sufficient degree that is accepts the Assets in their present form including any defects determined to exist in the Seller's title to any of the Purchased Assets, any condition at any of the Wells, SWDs, or Pipelines which would constitute a violation of an environmental law, rule or regulation, or that would otherwise materially affect the value of any of the Purchased Assets.

8. **TIME AND PLACE OF CLOSING.** Subject to any stay that may be imposed by the Bankruptcy Code, Bankruptcy Rules or court order, the sale contemplated by this Agreement (the "Closing") shall be consummated on the later of: (i) April 1, 2016 or (ii) on the first business day following the satisfaction of the Closing Contingencies, provided that the Seller and the Purchaser may, by mutual agreement, set an alternate date for the Closing. The Closing shall take place at a location mutually agreed upon by the Seller and the Purchaser or as ordered by the Bankruptcy Court.

9. **DELIVERIES BY SELLER.** At the Closing, the Seller shall deliver the following to the Purchaser (with the deliverables in Section 9(a) through 9(d) to be in form and substance reasonably acceptable to the Purchaser):

**(a)** assignments of the Oil and Gas Properties, Wells, Pipelines, Rights of Way, SWDs, and Permits. A separate assignment shall be provided for each county in which such assets are situate;

**(b)** deeds conveying the Real Estate;

**(c)** an assignment of the documents referenced in Section 1(e);

**(d)** a bill of sale conveying the assets described in Section 1(g);

**(e)** a Certificate of Good Standing for the Seller;

**(f)** a certified copy of the Final Order;

**(g)** Any other documents necessary or convenient to transfer and convey the Purchased Assets to the Purchaser;

**(h)** Any documents required or helpful in permitting transfer of the status of operator of the Wells previously operated by the Seller to the Purchaser;

**(i)** duly executed letters in lieu of division orders addressed to each purchaser of hydrocarbons from the Wells; and

**(j)** As of the Closing, the Seller shall also transfer possession of the assets identified in Section 1(a) through Section 1(i).

10. **DELIVERY BY PURCHASER.** At the Closing, the Purchaser shall deliver the Purchase Price to the Seller and all sales taxes or other transfer taxes incurred on the transaction

11. **REPRESENTATIONS AND WARRANTIES OF SELLER.** The Purchaser acknowledges that the Seller is a debtor-in-possession in bankruptcy and the Purchaser is entering into this agreement based solely upon the Purchaser's own inspection and due diligence. The following representations and warranties of the Seller are being made to facilitate that due diligence. The representations and warranties will terminate on

the date that final bids are due as set forth in the Initial Order (the "Bid Deadline"). If the Purchaser asserts that any representation or warranty is inaccurate, that assertion must be made prior to the Bid Deadline and the Purchaser's only remedy shall be a mutually agreed modification of the Purchase Price in accordance with this Agreement. Subject to the foregoing, the Seller makes the following representations and warranties to the Purchaser:

(a)    except as will be paid at the Closing, there are no amounts that would be payable as Cure Costs on any executory contract or unexpired lease included within the Purchased Assets;

(b)    As provided in the Final Order, the Seller shall convey the Purchased Assets at Closing to the Purchaser free and clear of any and all liabilities, claims, liens, encumbrances, and interests;

(c)    the Seller has not entered into any contracts with third parties relating to the sale/purchase of the Purchased Assets that are still in effect;

(d)    the Seller has no notice nor is it aware of any facts that would constitute a violation of any applicable laws, rules or regulations of any kind pending or threatened against Seller's business or the Purchased Assets which would adversely affect the value of the Purchased Assets or the Seller's ability to consummate the sale contemplated herein;

(e)    to the best of its knowledge, information and belief, the Seller has complied with all laws, rules and regulations relating to the Seller's Business and the Purchased Assets;

(f)    the Seller has paid in full, or will arrange for the payment in full at Closing, of all taxes that are then due and payable by the Seller with respect to the Purchased Assets the nonpayment of which could adversely affect the value of the Purchased Assets or the Purchaser's title to the Purchased Assets;

(g)    the Seller is a duly organized corporation, organized and existing under the laws of its state of incorporation and has the corporate power and authority to own and control its property, including the Purchased Assets;

(h)    subject to the entry of the Final Order, the Seller has the corporate power to execute, deliver and carry out the terms and conditions of this Agreement and has taken all necessary corporate and legal action with respect thereto and this Agreement, have been duly authorized, executed and delivered by it and constitute its valid, legal and binding agreements and obligations enforceable in accordance with the terms thereof;

(i)    AT THE CLOSING, THE TANGIBLE PURCHASED ASSETS WILL BE TRANSFERRED "AS IS, WHERE IS, WITH ALL FAULTS" AND THE SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE PURCHASED ASSETS, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND ALL SUCH WARRANTIES ARE HEREBY EXCLUDED AND DISCLAIMED. As of the Closing, the Purchased Assets shall be in substantially the same condition as said assets are in upon the execution of this Agreement, reasonable wear and tear excepted;

(j)    To the best of the Seller's knowledge, there are no actions at law or in equity, arbitration proceedings, governmental proceedings, including but not limited to EPA and OSHA, consent decrees or investigations, pending or threatened against the Seller or against the Purchased Assets except those which have been disclosed in writing by the Seller to the Purchaser prior to the execution of this Agreement;

(k)    the Seller has not engaged a broker with respect to the transaction contemplated by this Agreement and shall indemnify and hold the Purchaser harmless from any claims for brokerage fees, finder's fees or similar compensation with respect to the transaction contemplated by this Agreement;

(l)    The Seller is not subject to the Worker Adjustment and Retraining Notification Act and hereby acknowledges that the Purchaser does not intend to hire any of the Seller's employees;

(m)    Except as set forth on Schedule 11(m), to the Seller's knowledge, there are no Wells located on the Oil and Gas Properties which are shut-in or incapable of producing for which Seller has any plugging and abandonment obligation or liability as of the Closing.

(n)    Except as set forth on Schedule 11(n), no person has any call upon, option to purchase, or similar rights with respect to any portion of the production of Hydrocarbons from the Oil and Gas Properties from and after the Closing; and (ii) none of the Oil and Gas Properties is subject to or is bound by any futures, hedge, swap, collar, put or other commodities contract or agreement.

(o)    Schedule 11(o) sets forth a complete and accurate description of all wellhead, plant, pipeline and marketing imbalances with respect to the Oil and Gas Properties as of February 1, 2016.

(p)    To the Seller's knowledge, Schedule 11(p) contains a complete and accurate list of the status of any "payout" balance, as of the date of this Agreement, for the Wells subject to a reversion or other adjustment at some level of cost recovery or payout (or passage of time or other event other than termination of a Lease by its terms).

(q)    No representation or warranty made in this Agreement and no statement contained in any document, instrument or exhibit delivered to the Purchaser pursuant hereto or in connection with the transaction contemplated hereby, contains or will contain any untrue statement of material fact or omit to state a material fact necessary to make the statements contained herein, in the light of the circumstances in which they are made, not misleading.

12.    **REPRESENTATIONS AND WARRANTIES OF PURCHASER.** Purchaser represents and warrants that this Agreement has been approved by all necessary corporate and other actions, and is binding and enforceable against Purchaser in accordance with its terms, and the Purchaser had the intent and financial ability (including presently available funding without contingency) to consummate the transactions contemplated by the Agreement.

13. **CONDUCT OF BUSINESS PENDING CLOSING.** Seller agrees that from the date of the execution of this Agreement until and including the Closing, that except as the Purchaser may consent in writing:

(a) the Business of the Seller shall be conducted only in the ordinary course and in such a manner to avoid a breach of any other representations and warranties made by the Seller in this Agreement;

(b) the Seller shall use its best efforts to preserve the Business and to keep available the service of its present employees and to preserve the goodwill of all of those having business relations with the Seller;

(c) the Seller will not transfer, lease or otherwise dispose of any of its assets or properties, except in the ordinary course of its business;

(d) The Seller shall be entitled to all income from the Business and shall be responsible for all expenses of the Business attributable and relating to the period prior to Closing. The Purchaser shall be entitled to all income from production from the Wells after the Closing and shall be responsible for all expenses of the Business attributable and relating to the period after the Closing;

(e) The Purchaser shall have the ongoing right to review the Business' books, records, receipts, operations, and operating results; and

(f) The Seller shall not enter into any arrangement or agreement that will impact the Purchased Assets subsequent to the Closing.

14. **NO SOLICITATION.** The Purchaser acknowledges that the Seller has a fiduciary obligation to seek the highest and best price for the sale of its assets and may provide information to prospective purchasers at any time. The Seller agrees that until entry of the Initial Order it will not enter into or execute any definitive letter of intent or asset purchase agreement related to any of the foregoing.

15. **ENVIRONMENTAL MATTERS.** The Seller represents and warrants that to the best of its knowledge there are no conditions existing at the Purchased Assets that would constitute a violation of any applicable law, rule or regulation or that any applicable law, rule or regulation would require the remediation thereof. Unless the Purchaser has identified and raised an objection to the Purchased Assets based upon the foregoing statement being inaccurate before the evaluation of competing bids as provided in the Initial Order, the Purchaser accepts the Purchased Assets as is, where is and waives any claim against the Seller for an environmental condition existing at Closing.

16. **SECTION 363 SALE.** The Seller and the Purchaser agree that:

(a) the Purchaser's competing bid submitted herewith is based on substantially the same terms and conditions as are contained in the Agreement signed by U.S. Energy that is on file in the Bankruptcy Case.

- 10 -

(b)      Any initial competing bid submitted to the Bankruptcy Court for acceptance must be in an amount of at least Two Hundred Twenty-Five Thousand Dollars ($225,000) greater than the Purchase Price and any subsequent bid amounts must be in minimum increments as set forth in the Initial Order.  The Purchaser shall not have to meet the incremental bid requirements, but need only meet a competing bid to be considered the successful bidder for the Purchased Assets.  Apollo shall be entitled to and fully reserves its rights to credit bid its claims arising under its prepetition loan documents for the Purchased Assets.

(c)      In the event that there shall be a competing bid from a third party upon or following the submission of this Agreement to the Bankruptcy Court for an Approval Order, and the Closing shall fail to occur in accordance with the terms hereof with the successful bidder, then the Seller may accept another bid which is in compliance with the Initial Order.

17.      **ASSIGNMENT.**  No party may assign its rights or obligations under this Agreement without the written consent of the other party; provided, however, the Purchaser may assign its rights under this Agreement to any third party related to the Purchaser who assumes the Purchaser's obligations hereunder; provided that Purchaser remains jointly liable for the obligations of this Agreement

18.      **TITLE TO PURCHASED ASSETS.**  Title, risk of loss and possession of the Purchased Assets shall pass to the Purchaser at the Closing.

19.      **FURTHER ASSURANCES.**  The Purchaser and Seller shall use their commercially reasonable efforts to (i) take all actions necessary or appropriate to consummate the transactions contemplated by this Agreement, (ii) provide the other parties with reasonable cooperation and take such actions as such other parties may reasonably request in connection with the consummation of the transactions contemplated by this Agreement, (iii) at or following the Closing, execute and deliver such additional documents, instruments, assignments, conveyances and assurances, and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and reasonably assist Seller (at no out-of-pocket cost to Purchaser) with respect to the wind-down of its affairs and the continued administration of its bankruptcy estate, and (iv) cause the fulfillment at the earliest practicable date of all of the conditions to their respective obligations to consummate the transactions contemplated by this Agreement.

20.      **BULK SALES.**  The Seller and the Purchaser hereby waive compliance with any and all bulk sales laws.

21.      **GOVERNING LAWS.**  The laws of the State of Oklahoma and applicable federal law shall apply to and govern this Agreement.

22.      **ENTIRE AGREEMENT.**  This Agreement contains the entire understanding of the parties with respect to the subject matter, and supersedes all prior

agreements and understandings between the parties with reference thereto.    This Agreement may be amended only by a written instrument duly executed by the parties hereto.

23.    **SUCCESSORS AND ASSIGNS.**    The terms and conditions of this Agreement shall bind, and inure to the benefit of, the parties hereto and their respective successors and permitted assignees.

24.    **COUNTERPARTS.**    This Agreement may be executed simultaneously in two or more counterparts, any of which shall be deemed an original and all of which together shall constitute one and the same instrument, notwithstanding that all parties are not a signatory to the original or the same counterpart.  A facsimile or electronic signature of any party shall be sufficient to constitute the original execution of this agreement by such party for all purposes.

25.    **TERMINATION.**    This Agreement may be terminated by mutual written consent of all parties.  In addition, Seller can terminate this Agreement without liability or obligation except as set forth herein (i) if the Closing has not occurred by May 1, 2016 and Seller is not in material breach of this Agreement at such time; provided that in the event such failure to close was due solely to inaction breach of this Agreement by Purchaser, Seller shall retain the Deposit as its sole and exclusive remedy, or (ii) in the event that, as a result of any reductions in the Purchase Price sought by Purchaser or the payment of Cure Costs, the net proceeds received by the Seller from the Purchaser would be less than $4,750,000, but Purchaser will be entitled to the expense reimbursement and a return of the Deposit only.  Purchaser can terminate this Agreement without liability or obligation if the Closing has not occurred by May 1, 2016 and Purchaser is not in material breach of this Agreement at such time.  If (a) Seller has materially breached any of its representations, warranties or covenants contained in this Agreement, or (b) on May 1, 2016, Purchaser is ready, willing and able to close for a net purchase price of at least $4,750,000 (or its highest bid at the Auction if greater) and all contingencies under this Agreement for closing have been satisfied or waived as of that date, but Seller is not willing to close, then in the case of either (a) or (b) above Purchaser may terminate this Agreement on that date and Purchaser will be entitled to the Break-Up Fee and expense reimbursement.  If Purchaser becomes entitled to the Break-Up Fee and/or the expense reimbursement, such amounts will be paid upon closing of the sale of the Purchased Assets to another buyer.

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as of the day and year first above written.

OSAGE EXPLORATION & DEVELOPMENT, INC.

By: _____
    Kim Bradford, President

RED BLUFF RESOURCES OPERATING, LLC

By: _____
    Timothy K. Haddican

**<u>SCHEDULES</u>**

Schedule 1(k)            Executory Contracts

Schedule 3               Allocation of Purchase Price

Schedule 11(m)           List of Shut-In Wells

Schedule 11(n)           Purchase Rights or Options

Schedule 11(o)           Gas Imbalances

Schedule 11(p)           Payout Status on Wells

## Schedule 1(k) – Executory Contracts

| File Name | Property | Counterparty Name | Document Description | Street Address | City, State, Zip | Cure Costs | G |
|---|---|---|---|---|---|---|---|
| Covington Group Agreements.pdf | Norval Gooch #1-7MH; George Plagg #1-18MH | Amoeba Petroleum, Inc. | Offer to Acquire Interest dated 11/06/2012 | PO BOX 850891 | YUKON, OK 73099 | - | n/a |
| Agreement – ROW, Callahan, Final, FX.pdf | 4-16N-3W | Anna May Perry | Pipeline and Facilities Right-of-Way Grant | 11700 E WATERLOO RD | ARCADIA, OK 73007 | - | n/a |
| Agreement, FX- RoW, Whitten, OSAGE WHITTEN 1-3MH and 1-2W-3W.pdf | 11-26N-3W & 2-16N-3W | Barbara L. Whitten, Doyle Leon Pettijohn, Trustees | Pipeline and Facilities Right-of-Way Grant | 1318 SOUTH STILLWELL | PITTSBURGH, KS 66762 | - | n/a |
| SUA, 11-16N-3W, KB Ex.pdf | 11-16N-3W | Barbara L. Whitten, Trustee and Doyle Leon Pettijohn, Trustee | Surface Damage Agreement | 1318 SOUTH STILLWELL | PITTSBURGH, KS 66762 | - | n/a |
| Participation Agreement Black Oak 20-17N-2W.pdf | McNally 1-20WH | Black Oak Energy, LLC | Participation Agreement | 101 N ROBINSON, SUITE 800 | OKLAHOMA CITY, OK 73102 | - | YES |
| Participation AGreement Black Oak 29-17N-2W Executed.pdf | McNally #1-29MH | Black Oak Energy, LLC | Participation Agreement | 101 N ROBINSON, SUITE 800 | OKLAHOMA CITY, OK 73102 | - | YES |
| BOE Osage Participation Agreement BlackOak.pdf | Whitten 1-3MH | Black Oak Energy, LLC | Participation Agreement | 101 N ROBINSON, SUITE 800 | OKLAHOMA CITY, OK 73102 | - | YES |
| Executed Letter Agreement CMO.pdf | McNally #1-29MH | CMO Energy Partners II, LP | Pooling Letter Agreement | PO BOX 4687 | WICHITA FALLS, TX 76308 | - | n/a |
| Agreement – Subsurface ROW Grant, Edwards, v1.pdf Covington PPL.A.pdf | 4-16N-3W | CNL, Covington Oil, Inc. | Subsurface Right of Way Grant Partgas 1-18 | CNL PO BOX 54470 | CNL OKLAHOMA CITY, OK 73154 | - | n/a n/a |
| Miller Family Trust 23-17N-3W - Salt Water Disposal Agreement.pdf | 23-17-N-3W | Davis Miller Whitley and Charlotte, Joanne Barker, Trustees (Miller Family Trust) | Salt Water Disposal Agreement | CNL | CNL | - | Potential Amendment |
| Davis Recorded Assignment – Whitten 1-28MH.pdf | McNally #1-28MH | Davis Farms | Partial Assignment of Wellbore Interest Oil and Gas Leases | 3919 SOUTH BROADWAY | GUTHRIE, OK 73044 | - | n/a |
| Executed Davis Participation Agr, McNally 1-29MH- 29-17N-2W.pdf | McNally #1-29MH | Davis Farms | Participation Agreement | 3919 SOUTH BROADWAY | GUTHRIE, OK 73044 | - | YES |
| Agreement, FX - RoW, Davis Farms, OSAGE WHITTEN 1-3MH and 1-2WH.pdf | 4-16N-3W | Davis Farms | Pipeline and Facilities Right-of-Way Grant | 3919 SOUTH BROADWAY | GUTHRIE, OK 73044 | - | YES |
| Davis Participation Agreement Whitten 1-3MH.pdf | Whitten 1-3MH | Davis Farms | Participation Agreement | 1318 SOUTH STILLWELL | PITTSBURGH, KS 66762 | - | YES |
| Gas Purchase Contract – DCP, KB Sig.pdf | 11-16-3W, Whitten 1-2WH, Whitten 1-3MH | DCP Midstream | Gas Purchase Contract dated 04/01/2014 | 117 PARK AVENUE | OKLAHOMA CITY, OK 73012 | - | YES |
| Everest SFA.pdf | Everest #1-9MH | Dolese Bros. Co. | Surface Use Agreement | 20 NW 13TH STREET | OKLAHOMA CITY, OK 73103 | - | n/a |
| SUA - Dolese Bros, 9-17N-2W, Dolese Ex.pdf | Everest #1-9MH | Dolese Bros. Co. | Surface Use Agreement | 20 NW 13TH STREET | OKLAHOMA CITY, OK 73103 | - | n/a |
| Dwiggins Participation Agreement Whitten 1-2WH.pdf | Whitten 1-2WH | Dwiggins Consulting, LLC | Participation Agreement | 2004 KIAWAH CIRCLE | EDMOND, OK 73025 | - | YES |
| Participation Agreement Westalar et al 20-17N-2W.pdf | McNally 1-20WH | El Dorado Corporation | Participation Agreement | PO BOX 21332 | OKLAHOMA CITY, OK 73156 | - | YES |
| Participation Agreement Westalar et al 3-16N-3W.pdf | Whitten 1-3MH | El Dorado Corporation | Participation Agreement | PO BOX 21332 | OKLAHOMA CITY, OK 73156 | - | YES |
| Covington West Lawrie Prospect Letter Agreement of March 22, 2005.pdf | Norval Gooch #1-7MH; George Plagg #1-18MH, George Plagg #1-18MH | Endico, Inc. | Letter RE: West Lawrie Prospect | PO BOX 2552 | EDMOND, OK 78083-2552 | - | n/a |
| Covington West Lawrie Prospect Letter Agreement of March 22, 2005.pdf | Norval Gooch #1-7MH; George Plagg #1-18MH, George Plagg #1-18MH | Endico, Inc. | West Lawrie Prospect Operations | PO BOX 2552 | EDMOND, OK 78083-2552 | - | n/a |
| Agency Letter – Energy Financial.pdf | Agency Letter - Energy Financial | Energy Financial and Physical, LP | 02/25/2014 letter RE: EFP as agent for Osage E&D | 117 PARK AVENUE | OKLAHOMA CITY, OK 73012 | - | YES |
| NAESB, Energy Financial, FX.pdf | Energy Financial and Physical, LP | | Base Contract for Sale and Purchase of Natural Gas dated 04/01/2014 | 117 PARK AVENUE | OKLAHOMA CITY, OK 73012 | - | YES |

Page 1 of 4

| File Name | Property | Counterparty Name | Document Description | Street Address | City, State, Zip | Cure Costs | G |
|---|---|---|---|---|---|---|---|
| NAESB, Exhibit A, Energy Financial, FX.pdf | Whitten 1-2 & Whitten 1-3 | Energy Financial and Physical, LP | Transaction Confirmation 04/01/2014 | 117 PARK AVENUE | OKLAHOMA CITY, OK 73012 | - | YES |
| NAESB, Exhibit A, Energy Financial, G Plagg, McNally, Everest - FX.pdf | McNally 1-29MH, McNally 1-20MH, George Plagg 1-18 MN, George Plagg 1-19MH, Everest 1-9MH | Energy Financial and Physical, LP | Transaction Confirmation 10/01/2014 | 117 PARK AVENUE | OKLAHOMA CITY, OK 73012 | - | YES |
| Agreement - Recurring ROW 2, Floyd Clay, FX.pdf | 31-17N-R2W | Floyd Clay | Recurring Right-of-Way Agreement | CNL | CNL | - | n/a |
| Agreement - ROW, Ahrnsbrak, FX.pdf | McNally #1-20 WH | Francis H. Ahrnsbrak Revocable Trust | Pipeline and Facilities Right-of-Way Grant | 2700 NW 153RD STREET | EDMOND, OK 73103 | - | n/a |
| SUA, Ahrnsbrak, FX.pdf | McNally #1-20WH | Francis H. Ahrnsbrak Revocable Trust | Surface Damage Agreement | 2700 NW 153RD STREET | EDMOND, OK 73103 | - | n/a |
| Agreement - ROW, Harden, FX.pdf | George Plagg #1-19MH | Gooch Land, LLC | Pipeline and Facilities Right-of-Way Grant | CNL | CNL | - | n/a |
| McNally 1-29 SDA and ROWs.pdf | McNally #1-29MH | Hubert Plagg | Surface Damage Agreement | 1700 W CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Agreement - ROW, Hubert Plagg, FX.pdf | George Plagg #1-18MH | Hubert Plagg | Pipeline and Facilities Right-of-Way Grant | 1700 W CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Agreement - ROW, Plagg Farms, FX.pdf | McNally #1-29MH | Hubert Plagg | Pipeline and Facilities Right-of-Way Grant | 1700 W CR 74 | GUTHRIE, OK 73044 | - | n/a |
| SUA - Osage-Plagg Farms 29-17N-2W, FX.pdf | McNally #1-29MH | Hubert Plagg | Surface Damage Agreement | 1700 W CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Water Use Agreement, Hubert Plagg, v1.doc | 16-17N-2W | Hubert Plagg | Water Rights and Surface Damages Agreement | 1700 W CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Water Use Agreement, Plagg, Final.doc | McNally #1-29MH, 31-17N-R2W & 32-17N-R2W | Hubert Plagg | Water Rights and Surface Damages Agreement | 1700 W CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Water Use Agreement Ron Plagg v1 CLEAN, JZ Edits.doc | McNally 1-29, 31-17N-2W, 32-17N-2W | Hubert Plagg | Water Rights and Surface Damages Agreement | 1700 W CR 74 | GUTHRIE, OK 73044 | - | n/a |
| SUA - Hubert Plagg, 18-17N-2W, FX.pdf | SUA - Hubert Plagg | Hubert W. Plagg | Surface Damage Agreement | 1700 W CR 74 | GUTHRIE, OK 73044 | - | n/a |
| McNally 1-29 SDA and ROWs.pdf | McNally #1-29MH | Hugh Plagg | Surface Damage Agreement | 2300 S BROADWAY SUITE 100 | EDMOND, OK 73013 | - | n/a |
| Agreement - ROW, Plagg Farms, FX.pdf | McNally #1-29MH | Hugh Plagg | Pipeline and Facilities Right-of-Way Grant | 2300 S BROADWAY SUITE nth | EDMOND, OK 73013 | - | n/a |
| SUA - Osage-Plagg Farms 29-17N-2W, FX.pdf | McNally #1-29MH | Hugh Plagg | Surface Damage Agreement | 2300 S BROADWAY SUITE 100 | EDMOND, OK 73013 | - | n/a |
| Water Use Agreement, Plagg, Final.doc | McNally #1-29MH, 31-17N-R2W & 32-17N-R2W | Hugh Plagg | Water Rights and Surface Damages Agreement | 2300 S BROADWAY SUITE 100 | EDMOND, OK 73013 | - | n/a |
| Water Use Agreement Ron Plagg v1 CLEAN, JZ Edits.doc | McNally 1-29, 31-17N-2W, 32-17N-2W | Hugh Plagg | Water Rights and Surface Damages Agreement | 2300 S BROADWAY SUITE 100 | EDMOND, OK 73013 | - | n/a |
| Agreement - ROW, Callahan, Final, FX.pdf | 4-16N-3W | JOHNNY LEN SHULTS | Pipeline and Facilities Right-of-Way Grant | 4216 NW 31ST TERRACE | OKLAHOMA CITY, OK 73112 | - | n/a |
| Participation Agreement Weststar et al 20-17N-2W.pdf | McNally 1-20WH | JRG, LLC | Participation Agreement | 2586 HIGHWAY 159 WEST | BELLVILLE, TX 75231 | - | YES |
| Participation Agreement Weststar et al 3-16N-3W.pdf | Whitten 1-3MH | JRG, LLC | Participation Agreement | 2586 HIGHWAY 159 WEST | BELLVILLE, TX 75231 | - | YES |
| Agreement - ROW, Kevin Carey, FX.pdf | George Plagg #1-19MH | Kevin Carey and Alicia Carey | Pipeline and Facilities Right-of-Way Grant | 1623 W WASHINGTON | GUTHRIE, OK 73044 | - | n/a |
| Participation Agreement Weststar et al 20-17N-2W.pdf | McNally 1-20WH | KMR Energy Company | Participation Agreement | 1601 E 19TH | EDMOND, OK 73103 | - | YES |
| Participation Agreement Weststar et al 3-16N-3W.pdf | Whitten 1-3MH | KMR Energy Company | Participation Agreement | 1601 E 19TH | EDMOND, OK 73103 | - | YES |
| Agreement - ROW, Len Tontz, FX.pdf | George Plagg #1-19MH | Len and Linda Tontz | Pipeline and Facilities Right-of-Way Grant | 5414 NORTH HWY 74C | GUTHRIE, OK 73044 | - | n/a |
| Permit - Road Crossing1.pdf | Permit - Road Crossing 1 | Logan County Clerk | Permit | 301 E HARRISON | GUTHRIE, OK 73044 | - | n/a |

| File Name | Property | Counterparty Name | Document Description | Street Address | City, State, Zip | Cure Costs | G |
|---|---|---|---|---|---|---|---|
| Permit - Road Crossing2.pdf | Permit - Road Crossing2 | Logan County Clerk | Permit | 301 E HARRISON | GUTHRIE, OK 73044 | - | n/a |
| Permit - Road Crossing3.pdf | Permit - Road Crossing3 | Logan County Clerk | Permit | 301 E HARRISON | GUTHRIE, OK 73044 | - | n/a |
| Agreement - ROW Mark McNally v4, Clean, FX.pdf | McNally #1-20 WH | Mark McNally and Kathryn McNally | Pipeline and Facilities Right-of-Way Grant | PO BOX 1358 | GUTHRIE, OK 73044 | 580.42 | n/a |
| Participation Agreement Westslar et al 20-17N-2W.pdf | McNally 1-20WH | McNeil Oil and Gas, LLC | Participation Agreement | 1601 E 19TH | EDMOND, OK 73103 | - | YES |
| Participation Agreement Westslart et al 3-16N-3W.pdf | Whitten 1-3MH | McNeil Oil and Gas, LLC | Participation Agreement | 1601 E 19TH | EDMOND, OK 73103 | - | n/a |
| Agreement - ROW, Callahan, Final, FX.pdf | 4-16N-3W | Merrill Wayne Bross | Pipeline and Facilities Right-of-Way Grant | 6409 NW 24TH | OKLAHOMA CITY, OK 73116 | - | YES |
| Salt Water Disposal Agreement - Carey 1-30 SWD, FX.pdf | Carey SWD | Michael O. and Jary J. Carey | Salt Water Disposal Agreement | 5175 W COUNTY RD #75 | GUTHRIE, OK 73044 | 4,013.36 | YES |
| Agreement - ROW, Carey POD 7, FX.pdf | Carey SWD | Michael O. Carey and Mary Jane Carey | Pipeline and Facilities Right-of-Way Grant | 5175 W COUNTY RD #75 | GUTHRIE, OK 73044 | - | n/a |
| Agreement - ROW, Mike Carey, FX.pdf | Carey SWD | Michael O. Carey and Mary Jane Carey | Pipeline and Facilities Right-of-Way Grant | 5175 W COUNTY RD #75 | GUTHRIE, OK 73044 | - | n/a |
| Agreement - Row, Nancy Moore.pdf | Whitten 1-3MH | Nancy W. Moore as Trustee of the Steven E. Moore Revocable Trust | Pipeline and Facilities Right of Way Grant | 6301 BEAVER CREEK RD | OKLAHOMA CITY, OK 73162 | - | n/a |
| Participation Agreement Westslar et al 20-17N-2W.pdf | McNally 1-20WH | Ni Modo Energy, LLC | Participation Agreement | 908 NW 71ST STREET | OKLAHOMA CITY, OK 73116 | - | YES |
| Participation Agreement Westslart et al 3-16N-3W.pdf | Whitten 1-3MH | Ni Modo Energy, LLC | Participation Agreement | 908 NW 71ST STREET | OKLAHOMA CITY, OK 73116 | - | YES |
| Mike North Participation Agreement McNally 1-20WH.pdf | McNally 1-20WH | North O&G, LLC | Participation Agreement | 933 NW 164TH SUITE | EDMOND, OK 73103 | - | YES |
| North Assignmentttt McNally 1-20WH.pdf | McNally 1-20WH | North O&G, LLC | Partial Assignment of Wellbore Interest Oil and Gas Leases | 933 NW 164TH SUITE | EDMOND, OK 73103 | - | n/a |
| North Recorded Assignment Whitten 1-20WH.pdf | McNally 1-20WH | North O&G, LLC | Partial Assignment of Wellbore Interest Oil and Gas Leases | 933 NW 164TH SUITE | EDMOND, OK 73103 | - | n/a |
| North O&G Participation Agreement Exhibits - McNally 1-20MH 29-17N-2W.pdf | McNally 1-29MH | North O&G, LLC | Participation Agreement | 933 NW 164TH SUITE | EDMOND, OK 73103 | - | YES |
| Permit - ODOT Driveway Agreement.pdf | Permit - ODOT Driveway Agreement | Oklahoma Department of Transportation | State of Oklahoma DOT Driveway Agreement | 200 NE 21ST STREET | OKLAHOMA CITY, OK 73105 | - | n/a |
| Permit - ODOT, 74C Bore3.pdf | Permit - ODOT, 74C Bore3 | Oklahoma Department of Transportation | State of Oklahoma DOT Utility Permit for Federal or State Highways | 200 NE 21ST STREET | OKLAHOMA CITY, OK 73105 | - | n/a |
| Permit - ODOT, 74C Bore4.pdf | Permit - ODOT, 74C Bore4 | Oklahoma Department of Transportation | State of Oklahoma DOT Utility Permit for Federal or State Highways | 200 NE 21ST STREET | OKLAHOMA CITY, OK 73105 | - | n/a |
| SUA - Norval Gooch, 7-17N-2W, FX.pdf | Norval Gooch #1-7MH | Pamela J. Smith, Personal Representative and Attorney-In-Fact | Surface Damage Agreement | 1906 WEST NOBLE AVENUE | GUTHRIE, OK 73044 | - | n/a |
| Norval Gooch SDA and Assignments.pdf | Norval Gooch #1-7MH | Pamela J. Smith, Personal Representative of the Estate of Norval Robert Gooch and Attorney-In-Fact of Etta Dusa Gooch (Dusa Gooch) | Surface Damage Agreement | 1906 WEST NOBLE AVENUE | GUTHRIE, OK 73044 | - | n/a |
| McNally 1-29 SDA and ROWs.pdf | McNally #1-29MH | Plagg Farms | Surface Damage Agreement | 375 W COUNTY ROAD 73 | GUTHRIE, OK 73044 | - | n/a |
| Agreement - ROW, Plagg Farms, FX.pdf | McNally #1-29MH | Plagg Farms | Pipeline and Facilities Right-of-Way Grant | 375 W COUNTY ROAD 73 | GUTHRIE, OK 73044 | - | n/a |
| SUA - Osage-Plagg Farms 29-17N-2W, FX.pdf | McNally #1-29MH | Plagg Farms | Surface Damage Agreement | 375 W COUNTY ROAD 73 | GUTHRIE, OK 73044 | - | n/a |

| File Name | Property | Counterparty Name | Document Description | Street Address | City, State, Zip | Cure Costs | G |
|---|---|---|---|---|---|---|---|
| Water Use Agreement, Plagg, Final.doc | McNally #1-29MH, 31-17N-R2W & 32-17N-R2W | Plagg Farms | Water Rights and Surface Damages Agreement | 375 W COUNTY ROAD 73 | GUTHRIE, OK 73044 | - | n/a |
| Water Use Agreement Ron Plagg v1 CLEAN, JZ Edits.doc | McNally 1-29, 31-17N-2W, 32-17N-2W | Plagg Farms | Water Rights and Surface Damages Agreement | 375 W COUNTY ROAD 73 | GUTHRIE, OK 73044 | - | n/a |
| Agreement - ROW, James Living Trust, Final, FX.pdf | Whitten 1-3MH | Randall E. James and Connie S. James as Co-Trustees of the Clarence James Living Trust | Pipeline and Facilites Right of Way Grant | 1800 NORTH SANTA FE ROAD | GUTHRIE, OK 73044 | - | n/a |
| Rnadall James Participation Agreement.pdf | Whitten 1-3MH | Randall E. James Oil Company | Participation Agreement | 1800 NORTH SANTA FE ROAD | GUTHRIE, OK 73044 | - | Potential Amendment |
| Participation Agreement Weststar et al 20-17N-2W.pdf | McNally 1-20WH | RDJLP, LLC | Participation Agreement | 1601 E 19TH ST | EDMOND, OK 73013-6820 | - | YES |
| Participation Agreement Weststart et al 3-16N-3W.pdf | Whitten 1-3MH | RDJLP, LLC | Participation Agreement | 1601 E 19TH ST | EDMOND, OK 73013-6820 | - | YES |
| McNally 1-29 SDA and ROWs.pdf | McNally #1-29MH | Ron Plagg | Surface Damage Agreement | 1700 W. CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Agreement - ROW, Plagg Farms, FX.pdf | McNally #1-29MH | Ron Plagg | Pipeline and Facilites Right-of-Way Grant | 1700 W. CR 74 | GUTHRIE, OK 73044 | - | n/a |
| SUA - Osage-Plagg Farms 29-17N-2W, FX.pdf | McNally #1-29MH | Ron Plagg | Surface Damage Agreement | 1700 W. CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Water Agreement (Frac & Drilling), Plagg Farms, v1.doc | 31-17N-2W | Ron Plagg | Water Rights Agreement | 1700 W. CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Water Use Agreement, Plagg, Final.doc | McNally #1-29MH, 31-17N-R2W & 32-17N-R2W | Ron Plagg | Water Rights and Surface Damages Agreement | 1700 W. CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Water Use Agreement Ron Plagg v1 CLEAN, JZ Edits.doc | McNally 1-29, 31-17N-2W, 32-17N-2W | Ron Plagg | Water Rights and Surface Damages Agreement | 1700 W. CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Agreement - ROW, Ron Plagg, FX.pdf | George Plagg #1-18MH | Ron R. Plagg | Pipeline and Facilites Right-of-Way Grant | 1700 W. CR 74 | GUTHRIE, OK 73044 | - | n/a |
| Participation Agreement.pdf | Nemaha Ridge Project | Slawson Exploration Co., Inc. | Participation Agreement Nemaha Ridge Project, Logan Co., OK | 727 NORTH WACO SUITE 400 | WICHITA, KS 67203 | 7,962.48 | Potential Amendment |
| Participation Agreement.pdf | Nemaha Ridge Project | Stephens Energy Group, LLC | Participation Agreement Nemaha Ridge Project, Logan Co., OK | 623 GARRISON AVE. | FORT SMITH, AR 72901 | 54,229.35 | Potential Amendment |
| Sundance PPLA George Plagg 1-18mh.pdf | George Plagg #1-18 MH | Sundance Energy | Drill Proposal | 633 17TH STREET STE 1950 | DENVER, CO 80202 | - | (1) |
| Participation Agreement.pdf | Nemaha Ridge Project | US Energy Development Corporation | Participation Agreement Nemaha Ridge Project, Logan Co., OK | 2350 N FOREST RD | GETZVILLE, NY 14068 | - | Potential Amendment |
| Participation Agreement Weststar et al 20-17N-2W.pdf | McNally 1-20WH | Wagon Wheel, LLC | Participation Agreement | PO BOX 1387 | CLINTON, OK 73601 | - | YES |
| Participation Agreement Weststart et al 3-16N-3W.pdf | Whitten 1-3MH | Weststar Wheel, LLC | Participation Agreement | PO BOX 1387 | CLINTON, OK 73601 | - | YES |
| Participation Agreement Weststar et al 20-17N-2W.pdf | McNally 1-20WH | Weststar Oil and Gas, Inc. | Participation Agreement | 1601 E 19TH | EDMOND, OK 73103 | - | YES |
| Participation Agreement Weststart et al 3-16N-3W.pdf | Whitten 1-3MH | Weststar Oil and Gas, Inc. | Participation Agreement | 1601 E 19TH | EDMOND, OK 73103 | - | YES |
| Agreement - ROW, Weinand, Final, FX.pdf | Whitten 1-3MH | William C. Weinand and Barbara J. Weinand | Pipline and Facilites Right of Way Grant | 102 NORTH 18TH STREET | GUTHRIE, OK 73044 | - | n/a |
| ROW - Billy Kroll.pdf | Whitten 1-3MH | William C. Weinand and Barbara J. Weinand | Pipeline and Facilites Right of Way Grant | 102 NORTH 18TH STREET | GUTHRIE, OK 73044 | - | n/a |

66,765.61

CNL: Cannot Locate.
Note: Cure costs to the counterparties have not been disaggregated to individual executory contracts/properties. Cure costs exclude interest owner obligations that are required to be paid pursuant to Article 8.A & 8.B to the Asset Purchase Agreement.
(1) The Debtor's schedules have Sundance Energy with a claim of $1,784,691.76; however, the Letter Agreement between the parties does not appear to contain items related to the $1,784,691.76 claim for pre-paid drilling costs.

Schedule 3
Purchase Price Allocation

| Property Name | Rsv Class & Category | Working Interest | Revenue Interest | Location | PDP | Undeveloped Acreage | Purchase Price Allocation |
|---|---|---|---|---|---|---|---|
| **Osage Operated Wells** | | | | | | | |
| Norval Gooch 1-7 MH | PDP | 0.24732000 | 0.19316000 | 7-17N-2W | $ 539,185.48 | $ 58,883.54 | $ 598,069.02 |
| Plagg 1-19 MH | PDP | 0.62524000 | 0.48831000 | 19-17N-2W | $ 1,345,609.36 | $ 136,500.77 | $ 1,482,110.12 |
| Plagg 1-18 MH | PDP | 0.48774000 | 0.38093000 | 18-17N-2W | $ 483,997.70 | $ 115,556.85 | $ 599,554.55 |
| McNally 1-20 WH | PDP | 0.76047850 | 0.59269000 | 20-17N-2W | $ 1,000,100.17 | $ 232,288.70 | $ 1,232,388.87 |
| Everest 1-9 MH | PDP | 0.65329000 | 0.51022000 | 9-17N-2W | $ 712,171.03 | $ 175,576.97 | $ 887,748.00 |
| McNally 1-29 MH | PDP | 0.58704000 | 0.46329000 | 29-17N-2W | $ 765,338.20 | $ 134,050.44 | $ 899,388.63 |
| Whitten 1-3 MH | PDP | 0.62488000 | 0.49520000 | 3-16N-3W | $ 339,131.63 | $ 129,543.79 | $ 468,675.42 |
| Whitten 1-2 WH | PDP | 0.75831000 | 0.58513000 | 2-16N-3W | $ 244,528.77 | $ 213,627.33 | $ 458,156.11 |
| Carey SWD | SWD | 1.00000000 | | 30-17N-2W | $ 155,993.09 | $ - | $ 155,993.09 |
| **Total Osage Operated Well Count (9)** | | | | | $ 5,586,055 | $ 1,196,028 | $ 6,782,083.81 |
| **USEDC/SEG Operated Wells** | | | | | | | |
| Peacock 1-9 MH | PDP | 0.15629000 | 0.12723000 | 9-17N-3W | $ 155.20 | $ - | $ 155.20 |
| Krittenbrink 2-36 MH | PDP | 0.21875000 | 0.16687500 | 36-19N-4W | $ 215,798.05 | $ - | $ 215,798.05 |
| Tontz 1-32 MH | PDP | 0.08226000 | 0.06332000 | 32-17N-3W | $ 70,615.48 | $ - | $ 70,615.48 |
| Snipe 1-30 MH | PDP | 0.16087000 | 0.12627000 | 30-17N-3W | $ 103,000.62 | $ - | $ 103,000.62 |
| Blue Jay 1-13 MH | PDP | 0.22658000 | 0.19052000 | 13-18N-4W | $ 20,808.00 | $ - | $ 20,808.00 |
| Mallard 1-16 MH | PDP | 0.18135000 | 0.14189000 | 16-17N-3W | $ 6,145.77 | $ - | $ 6,145.77 |
| McPhail 2-18 MH | PDP | 0.15598200 | 0.12166596 | 18-18N-3W | $ 2,681.38 | $ - | $ 2,681.38 |
| Ruddy Duck 1-17 MH | PDP | 0.24528000 | 0.19251000 | 17-17N-3W | $ 76,479.00 | $ - | $ 76,479.00 |
| Pintail 1-21 MH | PDP | 0.20234000 | 0.16624000 | 21-17N-3W | $ 148,352.95 | $ - | $ 148,352.95 |
| Rooster 1-2 MH | PDP | 0.24991000 | 0.20205000 | 2-18N-4W | $ 136,107.45 | $ - | $ 136,107.45 |
| Snipe 1-19 MH | PDP | 0.15079000 | 0.11780000 | 19-17N-3W | $ 2,583.39 | $ - | $ 2,583.39 |
| Blevins 1-7 MH | PDP | 0.08104000 | 0.06345000 | 7-17N-3W | $ - | $ - | $ - |
| Chambers 1-5 MH | PDP | 0.19957000 | 0.15545000 | 5-17N-3W | $ 590.93 | $ - | $ 590.93 |
| Wolf 1-29 MH | PDP | 0.25000000 | 0.19125000 | 29-17N-3W | $ 209,274.94 | $ - | $ 209,274.94 |
| Krittenbrink 1-1 MH | PDP | 0.24874000 | 0.19401720 | 1-18N-4W | $ 161,666.88 | $ - | $ 161,666.88 |
| Tontz 2-32 MH | PDP | 0.08426000 | 0.06739000 | 32-17N-3W | $ 35,602.80 | $ - | $ 35,602.80 |
| Pintail 1-28 MH | PDP | 0.19412000 | 0.15206000 | 28-17N-3W | $ 48,089.25 | $ - | $ 48,089.25 |
| Witt 1-15 MH | PDP | 0.24323000 | 0.19396000 | 15-17N-3W | $ - | $ - | $ - |
| Vadder 2-2 MH | PDP | 0.04769000 | 0.03719000 | 2-17N-4W | $ 12,029.35 | $ - | $ 12,029.35 |
| McPhail 1-19 WH | PDP | 0.15377000 | 0.12058000 | 19-18N-3W | $ 8,902.48 | $ - | $ 8,902.48 |

Schedule 3
Purchase Price Allocation

| Property Name | Rsv Class & Category | Working Interest | Revenue Interest | Location | PDP | Undeveloped Acreage | Purchase Price Allocation |
|---|---|---|---|---|---|---|---|
| McPhail 2-19 MH | PDP | 0.15377000 | 0.12058000 | 19-18N-3W | $ 2,681.38 | $ - | $ 2,681.38 |
| Vadder 1-2 MH | PDP | 0.04769000 | 0.03719000 | 2-17N-4W | $ - | $ - | $ - |
| Chambers 1-8 MH | PDP | 0.22518000 | 0.17692000 | 8-17N-3W | $ - | $ - | $ - |
| Davis Farms 2-5 MH | PDP | 0.25000000 | 0.19459000 | 5-16N-3W | $ - | $ - | $ - |
| Wood Duck 1-12 WH | PDP | 0.00000000 | 0.01418000 | 12-17N-4W | $ - | $ - | $ - |
| Flamingo 1-12 WH | PDP | 0.00000000 | 0.00393000 | 12-18N-4W | $ - | $ - | $ - |
| Fuxa 1-16 H | PDP | 0.00000000 | 0.00163000 | 16-19N-4W | $ - | $ - | $ - |
| Ruffed Grouse 1-20 MH | PDP | 0.18697000 | 0.15228000 | 20-17N-3W | $ - | $ - | $ - |
| Finch 1-22 WH | PDP | 0.00000000 | 0.00096000 | 22-17N-3W | $ - | $ - | $ - |
| Riff Raff 1-22 H | PDP | 0.00000000 | 0.00096000 | 22-20N-3W | $ - | $ - | $ - |
| Jane 1-23 MH | PDP | 0.00000000 | 0.00924000 | 23-17N-3W | $ - | $ - | $ - |
| Canvasback 1-24 MH | PDP | 0.00000000 | 0.01201000 | 24-17N-3W | $ - | $ - | $ - |
| Toucan 1-24 WH | PDP | 0.00000000 | 0.00179000 | 24-17N-4W | $ - | $ - | $ - |
| Canvasback 1-25 MH | PDP | 0.24357000 | 0.20526000 | 25-17N-3W | $ - | $ - | $ - |
| Jane 1-26 MH | PDP | 0.15845000 | 0.13213000 | 26-17N-3W | $ - | $ - | $ - |
| Red Head 1-27 MH | PDP | 0.00000000 | 0.00538000 | 27-17N-3W | $ - | $ - | $ - |
| Begonia 1-30 MH | PDP | 0.00000000 | 0.01175000 | 30-18N-3W | $ - | $ - | $ - |
| Gregory 1-30 MH | PDP | 0.00000000 | 0.00015625 | 3-17N-4W | $ - | $ - | $ - |
| Spoonbill 1-34 WH | PDP | 0.00000000 | 0.00506000 | 34-19N-4W | $ - | $ - | $ - |
| Crow 1-35 MH | PDP | 0.00000000 | 0.00593000 | 35-19N-4W | $ - | $ - | $ - |
| House Wren 1-36 MH | PDP | 0.00000000 | 0.00277000 | 36-17N-3W | $ - | $ - | $ - |
| Wood Duck 1-6 WH | PDP | 0.00000000 | 0.00177000 | 6-17N-3W | $ - | $ - | $ - |
| Blevins 2-7 MH | PDP | 0.08104000 | 0.06345000 | 7-17N-3W | $ 18,818.54 | $ - | $ 18,818.54 |
| Morrisett SWD | SWD | 0.25000000 | 0.00000000 | | $ 35,299.29 | $ - | $ 35,299.29 |
| Davis Farms SWD | SWD | 0.25000000 | 0.00000000 | 5-16N-3W | $ 82,888.84 | $ - | $ 82,888.84 |
| Cat in the Hat SWD | SWD | 0.25000000 | 0.00000000 | | $ 85,749.61 | $ - | $ 85,749.61 |
| Total USEDC/SEG Operated Well Count (46) | | | | | $ 1,484,322 | $ - | $ 1,484,321.60 |

**Devon Operated Wells**

| Dudek 1-13 MH | PDP | 0.00173000 | 0.00134940 | 13-18N-3W | $ 197.33 | $ - | $ 197.33 |
| Branson 33-4-18-2 WHX | PDP | 0.04625000 | 0.03607500 | 33-18N-2W | $ 8,144.49 | $ - | $ 8,144.49 |
| Diedrick 1WH | PDP | 0.06250000 | 0.04875000 | 11-19N-4W | $ 2,191.62 | $ - | $ 2,191.62 |

## Schedule 3
## Purchase Price Allocation

| Property Name | Rsv Class & Category | Working Interest | Revenue Interest | Location | PDP | Undeveloped Acreage | Purchase Price Allocation |
|---|---|---|---|---|---|---|---|
| Pressjet 1MH | PDP | 0.05681000 | 0.04431180 | 35-19N-3W | $ 28,998.37 | $ - | $ 28,998.37 |
| BJ (Hopfer) 17-2 MH | PDP | 0.13947000 | 0.10878000 | 17-18N-3W | $ 20,179.53 | $ - | $ 20,179.53 |
| Pressjet 3MH | PDP | 0.05681000 | 0.04431180 | 35-19N-3W | $ - | $ - | $ - |
| Home Place 6WH | PDP | 0.05681000 | 0.04431180 | 35-19N-3W | $ 1,591.47 | $ - | $ 1,591.47 |
| Hopfer 1-17 MH | PDP | 0.13947000 | 0.10878000 | 17-18N-3W | $ - | $ - | $ - |
| Meg 19-19N-3W 1WH | PDP | 0.06073000 | 0.04736940 | 19-19N-3W | $ - | $ - | $ - |
| Penn 31-19-3 WH | PDP | 0.06506000 | 0.05147000 | 31-19N-3W | $ - | $ - | $ - |
| Penn 32-19-3 WH | PDP | 0.03125000 | 0.02437500 | 32-19N-3W | $ - | $ - | $ - |
| Home Place 4WH | PDP | 0.05681000 | 0.04431180 | 35-19N-3W | $ - | $ - | $ - |
| Home Place 5MH | PDP | 0.05681000 | 0.04431180 | 35-19N-3W | $ - | $ - | $ - |
| Pressjet 2WH | PDP | 0.05681000 | 0.04431180 | 35-19N-3W | $ - | $ - | $ - |
| Acton 33-4-18-2W 1WHX | PDP | 0.00000000 | 0.00091000 | 33-18N-2W | $ - | $ - | $ - |
| D. Ringer 1-19MH | PDP | 0.01687000 | 0.01315860 | 19-18N-2W | $ 1,704.65 | $ - | $ 1,704.65 |
| **Total Devon Operated Well Count (16)** | | | | | **$ 63,007.46** | **$ -** | **63,007.46** |
| **Other Non-operated Wells** | | | | | | | |
| Branson 17-4-26-2HM | PDP | 0.00745000 | 0.00605000 | 26-17N-4W | $ 1,301.70 | $ - | 1,301.70 |
| Dickason 1-7H | PDP | 0.00619000 | 0.00482820 | 7-17N-4W | $ 23,958.41 | $ - | 23,958.41 |
| Dolese 1-28 MH | PDP | 0.11349000 | 0.09076000 | 28-17N-2W | $ 45,327.02 | $ - | 45,327.02 |
| Branson 17-4-26 1HM | PDP | 0.00745000 | 0.00605000 | 26-17N-4W | $ - | $ - | $ - |
| Plagg 17-3-13 1MH | PDP | 0.00282000 | 0.00282000 | 13-17N-3W | $ - | $ - | $ - |
| Caldwell 1-18H | PDP | 0.00000000 | 0.00061129 | 18-17N-4W | $ - | $ - | $ - |
| Caldwell 3-18H | PDP | 0.00000000 | 0.00061129 | 18-17N-4W | $ - | $ - | $ - |
| TJ 1-29H | PDP | 0.00000000 | 0.00484000 | 29-17N-4W | $ - | $ - | $ - |
| Myers 18-3-7 1H | PDP | 0.00375000 | 0.00375000 | 7-18N-3W | $ - | $ - | $ - |
| **Total Other Non-Operated Well Count (9)** | | | | | **$ 70,587.13** | **$ -** | **70,587.13** |

| | | | | |
|---|---|---|---|---|
| **Total Purchase Price Allocations** | $ 7,203,972 | $ 1,196,028 | $ 8,400,000.00 |

$250,000 is allocated to Equipment.

# Schedule 11(m)
## Schedule of Wells with Plugging and Abandonment Obligations

The George Plagg 1-18 and the George Plagg 1-19 Wells were not producing as of 2-17-2016.  Both of these Wells are undergoing repairs and are expected to be back on line thereafter.  In the Seller's opinion, this temporary cessation of production does not constitute a shut-in of the Wells.

Therefore, the Seller has no Wells that are shut-in or incapable of production so as to give rise to any current Plugging or Abandonment Obligations.

The Shipman well in its current condition is incapable of production, and therefore may represent a plugging liability.

# Schedule 11(n)
## Seller's Purchase Rights or Options

Gas marketing agreement with Energy Financial Services containing a right to purchase natural gas that is limited to Operated Wells currently in production.   This Contract may be terminated on 30 days' written notice. See EFS Contract for complete detail.

There are no other contracts to report on this Schedule.

# Schedule 11(o)
## Seller's wellhead, plant, pipeline and marketing imbalances as of February 1, 2016

There are no imbalances to report on this Schedule.

# Schedule 11(p)

Seller is providing this information to determine whether any of the Wells are subject to contracts or other agreements whereby the Seller's currently stated interest would be impacted positively or negatively by a payout or cost recovery and, if so, provide the economic impact thereof.

Seller, in its capacity as Operator of the Wells wherein the Seller acts as operator, is not subject to any such reductions in its working interest in such Wells. Pursuant to the terms of the applicable JOA, in the event that working interest owner declined to participate in an Operation, the Seller's functional working interest could increase for a period of time through cost recovery mechanisms of the JOA.